Roger Lee GLAVIN and Robert Loring
Chesney, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 21374.

United States Court of Appeals
Ninth Circuit.

June 7, 1968.

Rehearing Denied July 18, 1968.

Certiorari Denied Oct. 28, 1968.

See 89 S.Ct. 258.

G. G. Baumen (argued), Los Angeles, Cal., for appellants.

Roger D. Browning (argued), Asst. U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, William M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before KOELSCH and BROWNING, Circuit Judges, and POWELL, District Judge.

BROWNING, Circuit Judge.

These are appeals from convictions under 18 U.S.C. § 2312 (1964) (interstate transportation of stolen motor vehicle), and 18 U.S.C. § 2314 (interstate transportation of stolen goods).

1. On the day set for trial the attorney who had been retained by both appellants (and who represents both on appeal) moved to be relieved of representing appellant Roger Glavin. Both appellants claim that the court committed error in denying the motion.

The proceedings on the motion are set out in full in the margin.[1] The precise ground for the motion was not clearly articulated. Counsel began by stating, "it appears there may perhaps be a conflict of interest here," thus suggesting the existence of the problem dealt with in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); namely, that common counsel was representing two defendants who had inconsistent interests. Counsel continued, however, "Mr. Glavin and I have not been able to agree on my representation, and he has indicated that he does not wish me to represent him," thus suggesting that the problem was rather that one of counsel's two clients was dissatisfied and wished to replace him.

█ The court apparently placed the latter construction on counsel's remarks, and therefore assumed that an exercise of its discretion was required. Good v. United States, 378 F.2d 934, 935–936 (9th Cir. 1967). We could not say that the court improperly exercised its discretion since counsel had represented appellant Roger Glavin for at least three weeks, the motion was presented on the day set for trial, no justification was offered for the lateness of the motion, and the court had been advised that the trial, scheduled to begin immediately, would require the appearance of nineteen witnesses, some from out of state, and would continue for four days.

---

1. COUNSEL: Your Honor, it appears there may perhaps be a conflict of interest here. I appear for both Mr. Roger Glavin and Mr. Chesney. Mr. Glavin and I have not been able to agree on my representation, and he has indicated that he does not wish me to represent him. I would therefore move the Court at this time to be relieved of representing Mr. Glavin.

THE COURT: Well, these people are entitled to a speedy trial, and we are here this morning ready to try the case. Now I have read the file in this case and it appears these defendants have been out on bond since early in May, which has afforded them ample time to secure whatever representation they desired. So I would deny your motion, Mr. Baumen, and we will proceed to try the case.

■ Appellants now contend that the motion was intended to advise the court that there was a conflict of interest between the two appellants and therefore representation of both by a single attorney would deprive them of effective assistance of counsel. Denial of such a motion is reversible error where there is some possibility that appellants have divergent interests so that one or both might not receive "untrammeled and unimpaired" assistance from common counsel. Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ But common representation is not error *per se*. There must be some possibility of conflicting interest, and hence of prejudice.[2] Appellants did not identify any possible divergence of interest in the trial court; their briefs to this court suggest none; the government contends that no possible conflict could have existed; and we have found none in our examination of the record.

2. Appellant Roger Glavin complains of the denial of his motion to suppress evidence found in what he contends was an illegal search of one of the two stolen trucks.

An inventory taken at the Montebello, California, branch of the International Harvester Corporation on March 3, 1966, disclosed that a 1966 International Harvester 10-wheel diesel truck was missing. An inventory taken on April 12 at the Glendale, California, branch disclosed the absence of a 1966 International Harvester 3-axle diesel truck equipped with a refrigeration unit. The Montebello truck was recovered on May 2. Lyman Ross, a special agent of the National Auto Theft Bureau, was present and observed that the stolen Montebello truck had been repainted in a red and white pattern. The next day Agent Ross saw a truck on the highway which met the description of the stolen Glendale truck. It was painted the same color combination as the recovered Montebello truck, and was pulling a trailer similar to one which Agent Ross knew had been stolen earlier in East Los Angeles. Agent Ross followed the truck until it pulled into a service road. He then radioed the California Highway Patrol. He explained to the officer who responded to his call why he believed the truck to be the one stolen from Glendale. The officer and Agent Ross followed the truck when it resumed its journey. It stopped again at a weighing scale. The officer asked the driver to move the truck to an adjacent parking area. There Agent Ross opened the door, discovered that the cab serial number was the same as that of the stolen Glendale truck, and so informed the officer. The officer arrested the driver, Larry Rexius, and appellant Roger Glavin, who was also in the truck.

Appellant Roger Glavin argues that the warrantless search which disclosed the serial number was unlawful, that the subsequent arrests of Rexius and appellant Roger Glavin were tainted by the search and were also unlawful, and that therefore certain evidence discovered in the search of the truck immediately after the arrests should have been suppressed.

■ If detaining the truck and checking its serial number constituted a "search" or "seizure" (see Cotton v. United States, 371 F.2d 385, 393 (9th Cir. 1967)), it was supported by probable cause to believe the truck was recently stolen by those in possession, and that evidence verifying the identification of the vehicle as the stolen truck would

2. Cases from this court include Juvera v. United States, 378 F.2d 433, 437–439 (1967); Kaplan v. United States, 375 F.2d 895, 898 (1967); Lugo v. United States, 350 F.2d 858, 859 (1965); and Gonzales v. United States, 314 F.2d 750, 752 (1963).

See also Lollar v. United States, 126 U.S.App.D.C. 200, 376 F.2d 243, 244–247 (1967); United States v. Paz-Sierra, 367 F.2d 930, 933 (2d Cir. 1966); United States v. Armone, 363 F.2d 385, 406 (2d Cir. 1966); Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359, 361 (1965); United States v. Dardi, 330 F.2d 316, 335 (2d Cir. 1964); United States v. Bentvena, 319 F.2d 916, 937 (2d Cir. 1963). Cf. 18 U.S.C. § 3006A (b) (1964).

be found by the search. The officers were justified in proceeding without a warrant by the "exceptional circumstance" created by the truck's mobility.[3]

3. Appellant Chesney contends that certain evidence taken from one of the trucks was improperly admitted as to him.

■■ In a search of the Montebello truck incident to the arrest of Bazil Buehler and defendant Leon Glavin (appellant Roger Glavin's brother),[4] the police discovered an invoice reflecting the sale of a truck part by Motor Truck Distributing Co. to "Chesney Trk." In the search of the Glendale truck the police discovered a number of receipts or memoranda of delivery bearing a credit card imprint in the name "Robert L. Chesney," reflecting the purchase of diesel fuel.

In objecting to the admission of these documents counsel referred to the evidence as "hearsay," but the basis for the objection reflected in counsel's extended colloquy with the court was that any legitimate inference of connection between appellant Chesney and the theft of the trucks which might be drawn from the presence in the trucks of these documents bearing his name was remote while the danger that an improper inference would be drawn was great.

The evidence was not hearsay. The documents were not submitted to prove the occurrence of the sale transactions or the existence of any other fact which the documents purported to record. The documents were submitted only in proof of their own existence; their presence in the trucks was offered for its probative value on the issue of appellant Chesney's involvement in the theft.

In admitting the documents the court carefully reviewed the other evidence in the record which connected appellant Chesney with the trucks and lent weight to the inference of Chesney's involvement. There was no dou! ᵕ a risk that the jury might take the documents as proof of the facts they purported to record— that appellant Chesney's credit had been used to purchase parts and fuel for the trucks—facts as to which the documents were hearsay.[5] But the task of "balancing * * * probative values against probative dangers" rested with the trial judge, and we are not prepared to say that his ruling exceeded the "lee-way of discretion" vested in the court in resolving problems of this kind. McCormick, Evidence § 152 at 320 (1954).

4. Appellant Chesney argues that certain other evidence was improperly admitted.

■ Two men—Bazil Buehler and Leon Glavin—were in the Montebello truck when it was recovered. Both were arrested. The police, believing Buehler was not involved, released him. On the following afternoon appellant Chesney telephoned Buehler and asked Buehler to go to Leon Glavin's house to get a package for him containing license tags, pieces of blank metal, and various papers. Buehler called the police and told them of Chesney's request. He was told to pick up the package and notify the police.

3. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Cf. Chapman v. United States, 365 U.S. 610, 615, 81 S.Ct. 776, 5 L.Ed. 2d 828 (1961); United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59 (1952); Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

Appellant relies upon Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1959), and Mosco v. United States, 301 F.2d 180 (9th Cir. 1962), but in neither case was the search supported by probable cause.

4. Leon Glavin was indicted and convicted but did not appeal.

5. We do not mean to suggest that admission of the documents for this purpose would necessarily be error. See Morrow v. State, 190 Md. 559, 59 A.2d 325, 326 (1948).

When Buehler reached home he discovered that Leon Glavin's wife had given a package to Buehler's wife. The package contained the items described by Chesney. Buehler called the police, who met him, examined and photographed the items in the package, and told him to complete the delivery to Chesney if he could. Buehler called Chesney and told him he had the package. Chesney asked Buehler to meet him at the Greyhound Bus terminal. Buehler did so, and turned the package over to Chesney, who stated, Buehler testified, that he "was glad to get it, because if it got in the wrong hands it could put them all behind bars." The police then arrested Chesney.

Appellant Chesney objected to the introduction of the contents of the package on the ground that the facts disclosed an "entrapment procedure" by which the police "planted" the package in Chesney's "temporary custody" for the purpose of implicating him. The trial court overruled the objection on the ground that the idea for the delivery of the package originated with Chesney and not the police. The court saw nothing objectionable in the fact that the police had suggested to Buehler that he complete the delivery of the package as Chesney had requested. As the court noted, "no one asked Mr. Chesney to take it, according to the testimony; he asked for it; he got it."

We agree. The police did not "entrap" appellant Chesney or "plant" the evidence upon him; they were under no obligation to prevent him from implicating himself by interrupting the chain of events which he had set in motion.

5. Both appellants urge that there was error in the instructions.

The trial court instructed the jury that possession of recently stolen property "if not satisfactorily explained" is a circumstance from which the jury may reasonably draw the inference and find in the light of the surrounding circumstances shown by the evidence that the possessor knew the property was stolen and participated in the theft. Appellants argue that the instruction diminished the presumption of innocence by imposing on them the burden of negating the elements of the crime, and that it violated the Fifth Amendment by permitting an adverse inference from their failure to testify.

The court instructed the jury that the burden is "always" upon the prosecution to prove every element of the crime beyond a reasonable doubt, that the defendants were presumed innocent, and that the presumption of innocence alone was sufficient to acquit unless the jurors were satisfied beyond a reasonable doubt of the guilt of each defendant "from all the evidence in the case." The inference from possession of recently stolen property was not given conclusive effect. On the contrary, the jury was told that possession of recently stolen goods was "ordinarily" a circumstance from which knowledge and participation could be inferred. It was made explicitly clear that possession was to be considered "in the light of surrounding circumstances in the case"; and that it was "the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw from the possession of recently stolen property. If any possession the accused may have had of recently-stolen property is consistent with innocence, the jury should acquit the accused." In sum, the jury was instructed to do "no more than 'accord to the evidence, if unexplained, its natural probative force.'" United States v. Gainey, 380 U.S. 63, 71, 85 S.Ct. 754, 759, 13 L.Ed.2d 658 (1965). Cf. Verdugo v. United States (9th Cir. 1968). These instructions did not shift the burden of proof to appellants. Indeed, the jurors were told "the law never imposes upon a defendant in a criminal case the burden of producing evidence."

Nor did the instructions compel the appellants to testify. As the court instructed the jury: "In considering whether possession of recently stolen property has been satisfactorily explained, the jury will bear in mind that in the

exercise of Constitutional rights, the accused need not take the witness stand and testify. Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused." The court added: "A defendant in a criminal case is not required to take the stand and testify. When he chooses this course of action, no presumption of guilt may be raised and no inference adverse to him may be drawn from this fact by the jury. The defendant, having availed himself of this privilege, you are to draw no inference of guilt against him from it. The presumption of innocence still applies to him. And if from the evidence adduced by the government and from the testimony of such witnesses as the defendant has produced, or either of them, a reasonable doubt arises in your mind as to the defendant's guilt, you should acquit him." Cf. United States v. Gainey, 380 U.S. at 70–71, 85 S.Ct. at 759–760.

Affirmed.