**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Manuel Arno MARTINEZ et al.,
Defendants-Appellants.**

**No. 25757.**

United States Court of Appeals,
Ninth Circuit.

Dec. 8, 1970.

Certiorari Denied March 8, 1971.
See 91 S.Ct. 969.

Tom Karas (argued), Tom O'Toole, Phoenix, Ariz., for defendants-appellants.

Joseph S. Jenckes (argued), Asst. U. S. Atty., Richard K. Burke, N. U. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and SWEIGERT, District Judge.*

DUNIWAY, Circuit Judge:

Martinez appeals from his conviction under the Dyer Act, 18 U.S.C. § 2312. We affirm.

1. *The selection of the jury.*

Martinez, before *voir dire* examination of the jury began, moved under 28 U.S.C. § 1867(a) to stay the proceedings against him on the ground that there had been a substantial failure to comply with the provisions of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869. Three district court judges, sitting in banc, denied the motion. The case went to trial on February 11, 1970,

at which time Martinez renewed his motion; it was again denied.

Martinez's attack is upon the plan of jury selection adopted by the District Court for Arizona as required by 28 U.S.C. § 1863(a). He does not claim, however, that the plan fails to comply with the express requirements of the Act. On the contrary, he concedes that the master jury list was selected in a manner consistent with the requirements of section 1863, that a qualified jury panel was selected from the master jury wheel in a manner consistent with section 1864 and section 1866, and that the panel from which the jurors who were to try him was selected was drawn from the qualified jury wheel in the manner required by section 1866. He does not claim that any juror whose name was in the qualified jury wheel was required to serve more than thirty days in violation of section 1866(e). He does not claim that the master jury panel, or the qualified jury panel, or the petit jury panel from which his jurors were drawn, were not selected in a random manner, or that any invidious discrimination by reason of race, creed, or anything else has been practiced (section 1862). He does not attack the validity of the portions of the plan that provide that a new petit jury panel is to be selected once every four months, and that once every two years the master jury wheel and the qualified jury wheel are to be emptied and refilled. See §§ 1863(b) (4), 1864(a) and 1866(a).

Martinez contends that the manner in which the following provision of the plan is administered in the Phoenix Division contravenes what he calls "the clear intent and purpose" of the Act:

"Not more than four months after any petit jury panel has been drawn, all the names constituting that panel shall be *replaced* in the Qualified Juror Wheel, if it has not since been emptied and refilled as [is to be done every two years], and a new panel will

---

* Honorable William T. Sweigert, United States District Judge, Northern District of California, sitting by designation.

be drawn and summoned. The new panel will be drawn before the names of the previous panel have been replaced in the Qualified Juror Wheel." [*Emphasis added.*]

The effect of this provision as administered is shown by what happened in this case. Petit jury panels were selected at four-month intervals on January 1, May 1, and September 1, 1969. Another panel was selected on January 5, 1970; this was the panel from which Martinez's jury was chosen. Before the January 5th selection, however, the names of the jurors on the panels selected on January 1 and May 1, 1969, were put back into the qualified juror wheel. As a result, there was a possibility that the panel from which Martinez's jury was chosen would include persons whose names had been on one of the first two jury panels for the preceding year. As it turned out, 25 persons out of 108 in the January 5, 1970 panel had been on one of the earlier panels, but none of these 25 sat in Martinez's jury.

According to Martinez, the "clear intent and purpose" of the Act "is that there be a constant rotation, changing and movement of names of prospective jurors." We cannot find that intent anywhere in the Act itself, nor in the legislative history that Martinez has shown us. The policies underlying the Act are stated in it as follows:

(1) "that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes," 28 U.S.C. § 1861, (2) "that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States," *id.*, and (3) that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status," *id.* § 1862.

None of these requires any more rotation, changing, or movement of names of prospective jurors than the Act itself requires. The Arizona plan does provide as much of each as the Act demands. It need not require more. The only excerpt from the legislative history to which Martinez refers is the following:

"The bill does not guarantee that each venire or each jury will mirror the structure of the community. It guarantees only that appropriate selection procedures have been used. Moreover, challenges will lie only for substantial failure to comply with the statutory provisions. There is room for a doctrine of harmless error. For example, if the local plan should call for 2,000 names to be placed initially in the master wheel and only 1,990 names were used, the reviewing court could find such a departure harmless."

H.R.Rep. No. 1076, 90th Cong., 2d Sess. 15, U.S.Code Cong. & Admin. News 1968, p. 1805. There is in this illustration of the flexibility of the Act's requirements no suggestion that a policy of "constant rotation, changing and movement of the names of prospective jurors" is being enunciated.

■ It is certainly true that the replacement feature of the Arizona jury-selection plan means that fewer of the persons whose names are in the master jury wheel will enter jury panels than if no replacement occurred. The Act, however, does not require that any particular proportion of those persons be actually called for service. Evidently, the District Court for Arizona felt that the replacement feature of its plan would somewhat reduce the burden of processing names drawn from the master jury wheel, as required by 28 U.S.C. §§ 1864 and 1865, thereby increasing the efficiency and lessening the expense of operating the plan. The Act left the District Court free to make that decision. Its doing so did not deprive Martinez of any rights.

### 2. *The recent possession instruction.*

Martinez was arrested in Arizona, in possession of an automobile that had been stolen five weeks before in California. The government offered an instruction as to the inferences that the jury could draw from such possession. It was similar to instructions that we have approved. Glavin v. United States, 9 Cir., 1968, 396 F.2d 725, 729–730. As in *Glavin*, it contained language telling the jury that the defendant need not testify, that possession may be explained by other evidence, and that the law never imposes a burden on the defendant of calling any witness or producing any evidence. The government also offered a separate instruction on the right of a defendant not to take the stand, similar to the one given in *Glavin*.

Martinez's counsel asked the court not to give the latter instruction, and to strike from the recent possession instruction all of the language relating to Martinez's failure to testify. The court complied with these requests. Thereupon counsel objected to the recent possession instruction, as modified, on the ground that, without the stricken language the instruction "now becomes a comment on the failure of the defendant to testify and also improperly shifts the burden of proof of proving his innocence to the defendant. * * *" The instruction does no such things. It merely tells the jury that recent possession is "ordinarily a circumstance from which the jury may reasonably draw the inference. * * *" And the court gave the usual instructions on burden of proof, reasonable doubt, the presumption of innocence, and the rule that the defendant has no burden or duty of calling any witness or producing any evidence.

Here, counsel presented to the court a "heads I win, tails you lose" proposition. The court had done what counsel asked; counsel cannot now assign that as error.

### 3. *Newly discovered evidence.*

Martinez moved for a new trial, claiming newly discovered evidence.

The motion was denied. We conclude that the evidence was not such as would probably produce an acquittal, and that therefore the trial judge did not abuse his discretion in denying the motion. United States v. Cousins, 9 Cir., 1970, 429 F.2d 1271.

Affirmed.