COMMONWEALTH vs. ANDRE E. MARTELL, JR.

Berkshire. March 7, 1990. - April 26, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Verdict, Deliberation of jury, Examination of jurors. *Jury and Jurors. Judge.*

A valid verdict was rendered at the trial of a criminal complaint where the jury had returned to the judge in open court, through their foreperson, a general verdict that the defendant was guilty of the crime with which he was charged and where, despite the court clerk's not immediately entering a notation of the verdict on the back of the complaint, the judge had marked the "working" docket sheet, for subsequent typing on the official docket sheet, to indicate his receipt of the verdict. [291-294]

Where a valid verdict of guilty had already been rendered in a criminal trial when a juror came forward to claim that she had felt pressured by her fellow jurors to vote guilty, and where the judge's interview of the reluctant juror yielded no evidence of extraneous influence in the jury's deliberations, there was no basis for the judge to question the verdict's validity, and he committed no error by declining to poll the jury or to require further deliberations. [294-295]

COMPLAINT received and sworn to in the North Adams Division of the District Court Department on November 23, 1987.

On transfer to the jury session of the Pittsfield Division, the case was tried before *James P. Dohoney,* J., and posttrial motions for a mistrial and for a new trial were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Ripps* for the defendant.

*Anne M. Kendall,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. We are concerned on this appeal with the defendant's claim that he was convicted by a less than unani-

mous jury. The problem came about as follows. The defend-
ant was tried before a jury of six in a District Court on a
charge of operating a motor vehicle while under the influence
of intoxicating liquor. The trial judge instructed the jury be-
tween 3 P.M. and 3:30 P.M. on June 29, 1988, and sent them
to deliberate. At 4:40 P.M., the jury reported that they had
reached a verdict and returned to the courtroom to announce
it. The forelady of the jury handed the verdict slip to the
court officer, who delivered it to the session clerk. The clerk
(after the judge had examined the verdict) then took the ver-
dict by means of the colloquy set forth below.[1] The judge
immediately marked the working docket sheet that the jury
had reached a verdict, but did not indicate what that verdict
was. Following the announcement of the verdict, the judge
dismissed counsel and the defendant from the courtroom so
he could chat with the jurors and thank them for their ser-
vice (as was his usual practice). A juror took this opportunity
to say, "I actually disagree . . . ." The judge interrupted the
juror to prevent her from finishing her statement. The judge
thereafter asked the jury to return to the jury room and ad-
vised counsel that the juror had said in substance, "I didn't
agree with the others."

The judge brought that juror back into the courtroom for
further discussion. In response to the judge's question
whether she had voted guilty, the juror said, "I just told
them I'd agree to disagree. . . . I voted guilty but was made

[1] THE CLERK: "Madam Forelady, has your jury reached a verdict?"
THE FORELADY: "Yes."
THE CLERK: "Would you please hand the verdict slips to the Court
Officer?
"Madam Forelady and members of the jury, hearken to your verdict as
recorded by the Court. On Docket No. 87-JC-0665 charging Andre E.
Martell, Jr., with operating a motor vehicle while under the influence of
intoxicating liquor, the jurors upon their oath do say that the defendant is
guilty as charged in that Complaint. So say you, Madam Forelady?"
THE FORELADY: "Yes."
THE CLERK: "So say you, members of the jury? Thank you."
The judge indicates in his memorandum of decision that some or all of
the jurors shook their heads affirmatively or said "yes" in response to the
last question of the clerk.

to see that I had no other choice." The judge asked the juror, "Are you satisfied that the Commonwealth has proven the defendant guilty beyond a reasonable doubt?" The juror responded, "No. . . . But I still voted that way." The judge then had the juror return to the jury room, instructing her not to discuss the substance of their conversation with the other jurors.

The defense counsel requested that the jury be polled. This request was denied. After soliciting suggestions from counsel, the judge indicated that he thought the jury should be brought in and told that "it would not be appropriate to accept their verdict," and that they should come back the next day and engage in "deliberating and/or revote, however they feel appropriate." The jury was brought to the courtroom and advised only that they should return the next day for further instructions on the case. The judge then marked the docket sheet as follows:

"VERDICT REC'D
AFTER COLLOQUY W/JUROR
JURY ASKED TO RETURN
FOR FURTHER DELIBERATION"

The next morning the judge again asked counsel for suggestions on how to proceed. The prosecutor argued that the guilty verdict should be accepted as announced on the previous day. The defense counsel requested that the jury retire for further deliberations, that the jury be polled, or that a mistrial be declared. The judge entered on the docket sheet a verdict of guilty, did not order further deliberations, denied defense counsel's request to poll the jury and denied the motion for a mistrial.

The defendant next filed a motion for a new trial, in which he claimed that the procedure for recording the verdict was invalid because immediate entry of the verdict had not been made on the complaint or docket sheet. After hearing argument on the motion, the judge found that the procedure for the recording of matters in the jury session is that a working docket sheet is kept in the case folder and the session clerk or

the judge makes handwritten entries during court on that docket. An identical form is kept in the docket book in the clerk's office and the handwritten entries from the working docket are typed on this form at a later time. When a jury returns a verdict, the session clerk hands the working docket sheet to the judge. The clerk then presents the verdict slip to the judge for examination. The session clerk takes the verdict slip from the judge and asks the jury to hearken to their verdict. The judge then handwrites or checks boxes to indicate that a verdict has been reached, the nature of the verdict, and the sentence imposed.

The judge indicated that this procedure was followed in this case, although the judge's written entry on the working docket sheet did not indicate the nature of the verdict or the penalty. It was not until the judge met with the jurors after the verdict had been reached, announced, and noted, that the juror stated she may have been pressured into voting guilty. Based on the existence of a verdict, which he considered unanimous and formally accepted, the judge denied the defendant's motion for a new trial. The defendant has appealed the orders denying his various requests for relief, including his motion for a new trial. We transferred the appeal to this court on our own motion. We find no error and affirm the defendant's conviction.

1. The defendant first argues that there was no valid verdict rendered because the procedure in this case failed to follow the directions specified in Mass. R. Crim. P. 27 (a) and (d),[2] and 28 (a),[3] 378 Mass. 897, 898 (1979). The defendant

---

[2]Rule 27 (a) and (d) of the Massachusetts Rules of Criminal Procedure reads as follows:

"(a) RETURN. The verdict shall be unanimous. It shall be a general verdict returned by the jury to the judge in open court. The jury shall file a verdict slip with the clerk upon the return of the verdict."

"(d) POLL OF JURY. When a verdict is returned and before the verdict is recorded, the jury may be polled in the discretion of the judge. If after the poll there is not a unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

[3]Rule 28 (a) of the Massachusetts Rules of Criminal Procedure reads as follows:

directs attention to *Commonwealth* v. *Tobin*, 125 Mass. 203, 208 (1878), which sets forth a ritual for the return and recording of a verdict in a criminal case.[4] The defendant maintains that this is the procedure prescribed by rule 27 (a), and he contends that, because the verdict in this case was not "minuted" by the clerk when it was received, there was a legally invalid verdict.[5]

The verdict is the formal decision of the jury, empaneled and sworn to try the case, as reported to the court. "The verdict which determines the rights of the parties, and is admitted of record, and upon which judgment is rendered, is the verdict received from the lips of the foreman in open court." *Commonwealth* v. *Tobin*, *supra* at 206. See *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 56-57 (1984); *Rich* v. *Finley*, 325 Mass. 99, 105-107 (1949); *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831); *Commonwealth* v. *Harris*, 23 Mass. App. Ct. 687, 692-693 (1987); *Commonwealth* v. *Powers*, 21 Mass. App. Ct. 570, 574 (1986); *Commonwealth* v. *Diaz*, 19

---

"(a) JUDGMENT. If the defendant has been determined to be guilty, a verdict or finding of guilty shall be rendered, or if he has been determined to be not guilty, a verdict or finding of not guilty shall be rendered, in open court, and shall be entered on the court's docket."

[4] *Commonwealth* v. *Tobin*, 125 Mass. 203, 206 (1878), states the ritual in these terms:

"By the settled practice in this Commonwealth, the course of proceeding upon the return of the jury into court in a criminal case is as follows: The clerk asks the jury if they have agreed upon their verdict. If the foreman answers that they have, the clerk then asks whether they find the defendant guilty or not guilty. The foreman answers, 'Guilty,' or 'Not guilty.' The clerk then marks on the back of the indictment a minute of the verdict so returned, and having done this, says to the jury, 'Gentlemen of the jury, hearken to your verdict as the court has recorded it. You upon your oaths, do say that the prisoner at the bar is guilty,' (or 'not guilty'). 'So you say, Mr. Foreman, and so, gentlemen, you all say.'"

[5] The defendant also contends that the verdict was legally defective because it was not affirmed by the jury on June 30, the day when they were summoned back to court by the judge. There is, however, no dispute that the jurors did affirm the verdict on the previous day. To the extent that the requirements for rendering a valid verdict were complied with in full on June 29, which we conclude to be the case, repetition of those requirements on the following day was not necessary.

Mass. App. Ct. 29, 31-32 n.2 (1984); *Commonwealth* v. *Kalinowski*, 12 Mass. App. Ct. 827, 829-830 (1981).

As required by this statement of the law, and by Mass. R. Crim. P. 27 (a), the jury in this case returned to the judge in open court, through their foreperson,[6] a general verdict that the defendant was guilty of the crime with which he was charged. All six members of the jury unequivocally indicated that they concurred in the verdict. This accorded with proper procedure. See K.B. Smith, Criminal Practice and Procedure § 1967 (1983). "The procedure that is usually followed relative to the return of a verdict is that once the jury has returned to the courtroom, the Clerk inquires of the foreperson if a verdict has been reached and if the answer is in the affirmative the verdict slip is given to the Clerk who hands it to the Judge. The Judge examines the verdict slip to see if it is technically in order and if it is, the Clerk will announced the verdict and then have the jurors affirm their verdict." *Id.*

We agree with the judge that it was not essential to the validity of the verdict to have the clerk make a notation of it on the back of the complaint. The judge stated in his memorandum that "[t]he universal record keeping practice in the District Court is not to write on the complaint. The practice in the Pittsfield jury session is to have the judge endorse the 'working' docket sheet, and the official docket sheet is typed at some subsequent time." Here, the judge received a verdict which showed no irregularity, and immediately marked the working docket sheet[7] to indicate his receipt of that verdict,

---

[6]By local custom in the Berkshire County jury-of-six session, the verdict is read aloud by the clerk rather than by the foreperson of the jury. The defendant does not claim any error based on this practice.

[7]The fact that Mass. R. Crim. P. 27 (a) and 28 (a) are not explicit on when the verdict is to be placed on the formal docket may be intended to allow the trial courts some flexibility in the handling of the task. When the *Tobin* case was decided, there was no jury-of-six practice in criminal cases, and no contemplation of the volume of business that would confront a busy criminal session in a District Court. It is entirely possible in some courts that formal docketing of a criminal judgment based on a verdict may not occur until some time after the verdict has been received. Thus, it appears that some courts have adopted the procedure, noted by the judge, of making entries on a "working" docket sheet, with the official docket to be con-

although he did not note its substance. At this point, the jury had completed its work,[8] and a valid verdict had been properly entered. See *Lawrence* v. *Stearns*, 11 Pick. 500, 501 (1831) ("an open and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court" is "complete and valid").[9]

2. The defendant also argues that the reluctant juror's answers to the judge's questions required further action by the judge before the verdict could be accepted. He maintains that the judge was required either to poll the entire jury or to direct them to engage in further deliberations. In view of our conclusion that a valid verdict already had been rendered, we disagree.

We have said that "[p]ostverdict interview should be initiated only if the court finds some suggestion that there were extraneous matters in the jury's deliberations." *Commonwealth* v. *Fidler*, 377 Mass. 192, 203 (1979). Faced with such suggestions, a trial judge properly may conduct a neutral, noncoercive interview with the juror. See *Commonwealth* v. *Hebert*, 379 Mass. 752, 754-755 (1980). However, the scope of that interview is strictly confined to the issue of whether any extraneous materials or statements might have come to the jury's attention before they delivered their verdict. See *Commonwealth* v. *Fidler*, *supra* at 196; *Woodward* v. *Leavitt*, 107 Mass. 453, 466 (1871). The judge is pre-

---

formed at some subsequent time. If there is a need for more detailed guidelines on the matter, consideration can be given to enlargement of the governing rules of criminal procedure or to the issuance of a policy directive from the administrative office of the District Courts. The answer, however, is not to exalt form over substance in this case to invalidate an otherwise proper verdict.

[8]In the normal course, the jury would not again be in the presence of the defendant in the courtroom.

[9]The fact that the judge asked the jury to return the next day possibly to resume deliberations is not a critical fact. The judge was entitled, after considering the further arguments of counsel and after reflection, to conclude that a valid verdict had been received and recorded, and that no further action on the part of the jury was required.

cluded from inquiring into the internal decision making process of the jury as a whole or of the individual juror being questioned. See *Commonwealth* v. *Webster*, 391 Mass. 271, 276 (1984); *Commonwealth* v. *Fidler, supra* at 198; *Commonwealth* v. *Grace*, 370 Mass. 746, 755 (1976); *Commonwealth* v. *Saunders*, 20 Mass. App. Ct. 917, 917 (1985).

The judge in this case properly interviewed the reluctant juror in a neutral and noncoercive manner. He assured himself that the juror had in fact voted to convict the defendant. The only other information discovered in the interview was that the juror felt pressured by her fellow jurors to vote guilty. This fact clearly pertains to the internal decision making process of the jury. See *United States* v. *Stoppelman*, 406 F.2d 127, 133 (1st Cir.), cert. denied, 395 U.S. 981 (1969) ("The fact that some jurors have weaker wills than others — or that one individual may bow to the pressure of eleven — cannot be a cause for reopening a case"). The interview yielded no evidence of extraneous influence on the jury, such as unauthorized view of sites by jurors, improper communications to jurors by third persons, or improper consideration of documents not in evidence. See *Commonwealth* v. *Fidler, supra* at 197. Accordingly, there was no basis for the judge to question the verdict's validity, and he committed no error by declining to poll the jury or to require further deliberations.

3. It follows from what has been said above that the judge also committed no error in denying the defendant's motions for a mistrial and a new trial. The orders appealed from are affirmed. The judgment of conviction is affirmed.

*So ordered.*