## COMMONWEALTH *vs.* JEFFREY FOWLER.

Bristol. November 2, 1999. - March 13, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Rape. Practice, Criminal,* Required finding, Examination of jurors, Verdict, Admissions and confessions, Comment by prosecutor, Failure to make objection, Capital case. *Jury and Jurors. Constitutional Law,* Admissions and confessions. *Evidence,* Consciousness of guilt, Flight.

Evidence at the trial of an indictment alleging rape of a child under G. L. c. 265, § 22A, was sufficient to warrant the inference of penetration beyond a reasonable doubt. [33-34]

At a criminal trial in which the jury had returned and unanimously affirmed verdicts of guilty of rape and murder in the first degree with extreme atrocity or cruelty, the clerk's belated request of the foreman to return the verdict on the felony-murder indictment without requesting unanimous affirmation of all the jurors did not create a substantial likelihood of a miscarriage of justice, where there was ample opportunity for the jurors to have indicated any lack of assent and where the defendant's failure to object deprived the judge of the opportunity to correct the possible error. [34-36]

At the trial of rape and murder indictments, the prosecutor improperly elicited and improperly commented on testimony from two police officers regarding the defendant's postarrest, post-Miranda invocation of his right to remain silent [36-40]; however, no substantial risk of a miscarriage of justice was created in light of the very strong evidence against the defendant [41-43].

INDICTMENTS found and returned in the Superior Court Department on April 15, 1993, and April 28, 1993, respectively.

The cases were tried before *Walter E. Steele*, J., and motions for required findings of not guilty and for reconsideration were considered by him.

Following review by this court, 425 Mass. 819 (1997), sentences were reimposed by *Richard F. Connon*, J.

*Kevin S. Nixon* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant, Jeffrey Fowler, was convicted of

rape of a child with the use of force and of murder in the first degree on theories of extreme atrocity or cruelty, and felony-murder. The victim was the two year old daughter of the woman with whom he was living. He raises four issues on appeal, claiming that (1) the trial judge erred in denying the defendant's motion for required findings of not guilty of rape and felony-murder because there was insufficient evidence of penetration to convict him of rape; (2) the clerk did not engage in a colloquy allowing each juror to express assent to the felony-murder conviction; (3) the defendant's invocation of his constitutional right to remain silent was impermissibly used against him; and (4) because the jury instructions regarding murder in the first degree on the theory of extreme atrocity or cruelty were defective, a substantial likelihood of a miscarriage of justice exists. The defendant further urges that we exercise our power under G. L. c. 278, § 33E, and either reduce the murder verdict to manslaughter or order a new trial. We affirm his convictions of felony-murder and rape and determine that it is unnecessary to address his conviction of murder on the theory of extreme atrocity or cruelty. We conclude there is no reason to exercise our power under G. L. c. 278, § 33E.

1. *Facts and procedural history.* We summarize the evidence in the light most favorable to the Commonwealth, but reserve certain details for the discussion of the issues the defendant raises on appeal. See *Commonwealth* v. *Coonan,* 428 Mass. 823, 824 (1999).

The victim's mother and the victim would sometimes sleep at the defendant's apartment. She and the victim had been doing so in the days prior to the child's death. On May 19, 1992, the day before her death, the victim was in good health. She had returned from an overnight visit with her father and spent the day with her mother and various family members and friends. The victim and her mother went to the defendant's apartment and shortly thereafter, at approximately 7:45 P.M., the mother asked the defendant to watch the victim while she went to a tanning salon.

The mother returned and put the victim to bed. After a short time, the mother heard a noise and noticed that the victim felt warm and had vomited. She gave the victim Tylenol and something to drink, and the victim vomited again. The mother told the defendant that she was going to take the child to the doctor, but the defendant told her that there was nothing seri-

ously wrong. The victim became sleepy and her mother put her to bed.

The defendant found the victim the next morning in her room and screamed to the mother that she was not breathing. The mother attempted to give her cardiopulmonary resuscitation (CPR). On the way to a hospital, the mother asked the defendant what could have happened, and the defendant said it might be "internal injuries."

The victim was pronounced dead on arrival at the hospital from a blunt impact to her abdomen that occurred within hours of death.[1] The victim also had bruises on her body that occurred around the time of her death. When the defendant saw her body, he fainted; he also fainted at least one other time while at the hospital. A few days after the victim's death, the defendant told the mother that he would shoot himself in the head if "they try to blame this on me."[2]

At first, the death was ruled as accidentally caused by a seat belt because the victim was in a near-collision automobile accident with her mother two days earlier. However, in October, 1992, the medical examiner issued a new death certificate in which he listed the manner of death as homicide because a State police crime laboratory reported that swabs taken from the victim's mouth showed the presence of sperm. In November, 1992, the police required the defendant to give blood for deoxyribonucleic acid (DNA) analysis.[3] In December, 1992, the defendant moved to Seattle, Washington.

The analysis showed that the sperm DNA matched the defendant's, and he was arrested in Seattle in April, 1993. After a jury trial and convictions, the trial judge, sua sponte, set aside the guilty verdicts and ordered a new trial because he doubted

---

[1] The victim suffered a torn mesentery which caused her to bleed to death. The mesentery is fat with nerves and blood vessels that attaches in a fan-like manner to the small and large bowel and is fixed to the tissue around the vertebral column. Such an injury is consistent with a punch, blow or heavy trauma to the abdomen. It is inconsistent with a seat belt injury, discussed *infra*, that usually affects organs that cannot move such as the liver, pancreas, or spleen.

[2] He also told the mother that, if they tried to blame her, he would take the blame and then kill himself.

[3] Blood samples were taken from other men who had had contact with the victim in the days prior to her death.

the validity of the Commonwealth's DNA evidence.[4] See Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). The Commonwealth appealed, and we vacated the judge's order, thus reinstating the jury's verdicts of guilty of murder and rape. See *Commonwealth* v. *Fowler*, 425 Mass. 819, 829 (1997). This appeal followed.

2. *Sufficiency of the evidence.* The defendant argues that, because there was no evidence of injury to the child's mouth, the presence there of sperm was insufficient to prove penetration beyond a reasonable doubt and thus his conviction of rape under G. L. c. 265, § 22A, could not be sustained. In reviewing a "denial of a defendant's motion for a required finding of not guilty, we inquire whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Coonan*, 428 Mass. 823, 828 (1999). Reasonable and possible inferences may be drawn from largely circumstantial evidence. *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992), and cases cited.

There was sufficient evidence to sustain a conviction of rape. The crime of "unnatural sexual intercourse" with a child includes oral sex. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 583 n.5, 584 (1977) (discussing "unnatural sexual intercourse" as applied to various provisions of G. L. c. 265). Penetration can be inferred from circumstantial evidence. See *Commonwealth* v. *Tavares*, 27 Mass. App. Ct. 637, 642 (1989) ("Semen, a piece of twig, and dirt found in the victim's vagina" was sufficient evidence to find penetration beyond reasonable doubt); *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987) (touching vulva or labia intrusive enough for wrongful penetration of vagina); *Commonwealth* v. *Thomas*, 19 Mass. App. Ct. 1, 5 (1984) (sufficient evidence where jury entitled to infer penetration from six year old's testimony that her "privacy" was made to feel bad, by evidence of defendant's lubricating victim's "private parts," and by doctor's testimony about injury to victim's hymen).

In this case, the presence of sperm was enough evidence to

---

[4]The judge ruled that a certain statistical analysis of DNA should have been excluded. See *Commonwealth* v. *Fowler*, 425 Mass. 819, 824-825, 829 (1997) (vacating judge's order setting aside verdicts and granting new trial because statistical issue resolved in light of new studies, revealing that DNA results used at trial were not prejudicial to defendant).

warrant the inference beyond a reasonable doubt that the victim had been penetrated orally. From the evidence that the child vomited and had something to drink, the jury could reasonably infer that the child had ingested a large amount of semen and that some of it lingered despite her vomiting.[5] See *Commonwealth* v. *Elliot*, 430 Mass. 498, 500 (1999). The evidence was sufficient to prove rape beyond a reasonable doubt.

3. *Lack of colloquy on felony-murder verdict.* The defendant argues that his conviction of felony-murder is a nullity because the jury were not asked unanimously to affirm their verdict. The foreman was asked and did affirm the guilty verdict of felony-murder, but the clerk neglected to add, "so say you all," or words to that effect. Immediately prior to this exchange, however, the jury were engaged in the complete colloquy in regard to rape and murder with extreme atrocity or cruelty.[6] Because the defendant did not object to the lack of the colloquy, we review, pursuant to G. L. c. 278, § 33E, to determine whether a substantial likelihood of a miscarriage of justice exists. See *Commonwealth* v. *Robles*, 423 Mass. 62, 72 nn. 15 & 16 (1996) (substantial likelihood of miscarriage of justice standard used where attorney requests polling of jury but did not object to lack of affirmation). See also *Commonwealth* v. *Skinner*, 408 Mass. 88, 92 (1990). Cf. *Commonwealth* v. *Nettis*, 418 Mass. 715, 717-719 (1994).

The colloquy is a ritual that has developed for the return and recording of a verdict in a criminal case. *Commonwealth* v. *Martell*, 407 Mass. 288, 292 & n.4 (1990). See Mass. R. Crim. P. 27 (a), 378 Mass. 897 (1979), and Mass. R. Crim. P. 28 (a), 378 Mass. 898 (1979) (requiring unanimous verdict declared in open court). The colloquy itself is not required by rule or statute.

---

[5] Because there was sufficient evidence to sustain a rape conviction, the judge also did not err in denying the defendant's motion for a required finding of not guilty of felony-murder.

[6] The colloquy occurs after the foreperson of the jury states the verdict and the clerk marks the verdict on the indictment form. See *Commonwealth* v. *Martell*, 407 Mass. 288, 292 n.4 (1990), quoting *Commonwealth* v. *Tobin*, 125 Mass. 203, 206 (1878). In the present case, regarding the guilty verdicts of rape and murder in the first degree committed with extreme atrocity or cruelty, the clerk recited the following: "Mr. Foreman, and members of the jury, harken to your verdicts. On your oath, you do say that on indictment[s] [for rape and murder in the first degree with extreme atrocity or cruelty] . . . that the defendant . . . is guilty . . . . As you say, Mr. Foreman, so you all say, members of the jury?" The exact wording of the colloquy varies slightly. See, e.g., *Commonwealth* v. *Martell*, *supra* at 289 n.1.

See *Commonwealth* v. *Martell, supra*; *Commonwealth* v. *Tobin*, 125 Mass. 203, 206 (1878) ("settled practice" to use colloquy). Its purpose is to allow jurors to express dissent to the court because "[s]uch an affirmation is the only evidence the court can receive of the free and unanimous assent of the jury to the verdict." *Rich* v. *Finley*, 325 Mass. 99, 106 (1949).[7] Thus, in *Rich* v. *Finley, supra*, where one juror died before the jury announced their verdict in open court, the affirmation of the other eleven jurors was held insufficient because the law required that "a verdict can be rendered only by the final concurrence of twelve jurors." *Id.*

However, in *Commonwealth* v. *Lawson*, 425 Mass. 528, 531-532 (1997), we allowed a verdict to stand where the clerk read the colloquy but there was no record of the jury's answer. We said that the members of the jury were afforded ample opportunity to express their dissent with each verdict as it was returned. We also said there was sufficient evidence of the jury's affirmation in light of the foreperson's announcement, the clerk's proclamation and colloquy in the presence of the jury in open court, and the notation of guilty on the verdict slip following the colloquy. *Id.* at 532. In *Commonwealth* v. *Clements*, 36 Mass. App. Ct. 205, 206-208 (1994), the Appeals Court upheld a verdict where the clerk initiated a colloquy but failed to ask for the actual verdict.

Unlike *Rich* v. *Finley, supra*, in this case, the jury had returned verdicts of guilty of rape and murder in the first degree with extreme atrocity or cruelty. The jury were engaged in the colloquy and all affirmed both verdicts. Following the affirmation on the first two charges, defense counsel asked that the jury be polled and discussed this request with the judge. One of the assistant district attorneys noticed that the clerk had not mentioned the felony-murder conviction. The clerk then asked the jury, "Mr. Foreman, would you please rise again. How say you, Mr. Foreman, on indictment 32464, charging the defendant . . . with murder, as to murder in the first degree committed during the commission of a crime punishable by life imprison-

---

[7]According to *Commonwealth* v. *Tobin, supra* at 206-207, the purpose of the colloquy is to ensure that the court understands the verdict rendered by the jury to safeguard against mistake or misapprehension in the record. There, the clerk did not ask the foreperson of the jury orally to declare the verdict in open court, although the clerk did recite the colloquy. The court held that there was no verdict rendered. *Id.* at 207-208.

ment?" The foreman responded, "Guilty," and the clerk said, "Thank you. Return the verdict slip, please." In these circumstances, we conclude that there was ample opportunity for members of the jury to indicate any lack of assent, and that the failure of the clerk precisely to follow the ritual did not create a substantial likelihood of a miscarriage of justice.[8]

Furthermore, a simple objection to the lack of a colloquy would have allowed the judge to remedy the problem. We have noted, in other contexts, that failure to object deprived the judge of the opportunity to correct possible errors through curative instructions. See *Commonwealth* v. *Sherick*, 401 Mass. 302, 305 (1987), citing *Commonwealth* v. *Cifizzari*, 397 Mass. 560, 579 (1986). See also *Commonwealth* v. *Connors*, 18 Mass. App. Ct. 285, 288 (1984) (timely objection to jury instructions would have enabled judge to consider cure).[9]

4. *The defendant's silence.* The defendant argues that his right to remain silent was improperly used against him. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 641-642 (1997), citing *Commonwealth* v. *Teixera*, 396 Mass. 746, 752 (1986) ("evidence of a defendant's postarrest, post-Miranda silence cannot be used for any purpose").

As part of her closing, the prosecutor discussed the testimony of a Seattle detective and a special agent of the Federal Bureau of Investigation (FBI), who interviewed the defendant in Seattle on the day of his arrest. The two testified that, after being given his Miranda rights, the defendant chose to speak to the two officers. The defendant was asked how his sperm ended up in the victim's mouth. The defendant told them that the mother had performed oral sex on him on May 19, 1992, the morning of the day before the victim's death, and that the mother kissed

---

[8]The defendant argues that the oral affirmation is "constitutionalized" by arts. 12 and 15 of the Massachusetts Declaration of Rights. However, in *Commonwealth* v. *Lawson*, 425 Mass. 528, 530 n.5 (1997), we expressly declined to give "constitutional stature" to the oral affirmation ritual.

[9]The Appeals Court decisions that the defendant cites do not aid his case. In *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 695-696 (1991), the court declared the verdict on one count of a four count indictment "a nullity" because the clerk never had the jury recite their verdict to that particular count. In *Commonwealth* v. *Clements*, 36 Mass. App. Ct. 205, 206-208 (1994), the Appeals Court upheld a verdict where the clerk gave the colloquy but did not ask for the actual verdict. See *Commonwealth* v. *Lawson*, *supra* at 532, quoting *Commonwealth* v. *Dias*, 419 Mass. 698, 703 (1995) ("better practice is to obtain 'a clear sign of each juror's assent to the announced verdict' ").

her baby and transferred the sperm to the victim's mouth. The detective told the defendant that no one was going to believe his story. The detective also testified that at that point, "the defendant seemed to reflect; his eyes kind of teared up; and at that point *he said he didn't think he should say anything more*" (emphasis added). When the FBI agent testified, he said that, when the detective expressed doubt about the defendant's story, the defendant did not speak further, "*[s]o we didn't have an opportunity to clear up a lot of the details and get more specifics*" (emphasis added).

In closing argument, the prosecutor drew attention to the statements by saying, "Then at some point . . . a thirty-two year veteran of the Seattle police force says, 'Hey buddy, nobody's going to buy that story. Nobody's going to buy the fact that that semen was in [the mother's] mouth all that time.' What does the defendant do? He stops, thinks, gets a little teary eyed, *doesn't point out any discrepancies in what they said*" (emphasis added).[10]

The defendant argues that admitting the police testimony about his decision not to speak and the prosecutor's comment on his decision to invoke his right to remain silent were reversible errors because they constitute comment on postarrest silence prohibited by *Doyle* v. *Ohio*, 426 U.S. 610 (1976). We first must determine whether these incidents were *Doyle*-type errors and, if they were, we must decide whether they require reversal.

The Commonwealth argues that, because the defendant chose to speak to police on several occasions, he never invoked his right to remain silent, and thus the *Doyle* case is inapplicable. The Commonwealth's argument overlooks the fact that, once Miranda warnings have been given to an individual, although the individual may make a knowing, voluntary, and intelligent

---

[10]It was permissible for the Commonwealth to cross-examine the defendant about what he had neglected to tell the law enforcement officials in Seattle when he was arrested. The version of events that the defendant related when he testified at trial varied from the statements he gave police officials. The prosecutor was impeaching the defendant with prior inconsistent statements. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 639 (1997) (permissible for prosecutor to comment on differences between defendant's pretrial statements and trial testimony); *Commonwealth* v. *Sherick*, 401 Mass. 302, 304, 305 (1987) (constitutional right to remain silent not implicated where prosecutor attacks defendant's credibility by highlighting "instances where the defendant changed his account of the event to conform with the strong evidence of the Commonwealth").

waiver of that right, the individual may invoke the right at any time. During questioning, "[i]f the individual indicates in any manner, at any time . . . that he wishes to remain silent, the interrogation must cease." *Miranda* v. *Arizona*, 384 U.S. 436, 473-474 (1966).[11] See *id.* at 444; *Commonwealth* v. *Cobb*, 374 Mass. 514, 518 (1978).

When the defendant was arrested in Seattle, he was given his Miranda rights but indicated his willingness to speak to the detective and FBI agent. However, right after the detective expressed doubt about the defendant's story, the defendant told the two officers that he did not think he should say anything further. The defendant's words were a statement of intent to invoke his right to remain silent. See *Commonwealth* v. *Cobb*, *supra* at 519 ("the response 'What can I say?' appears to us to have . . . indicated an intention to invoke the right to remain silent"). In addition, the fact that the two law enforcement officials in Seattle ceased questioning him after his statement indicates that they believed that the defendant was invoking his right to remain silent.

The Commonwealth argues that the testimony of the two officers contained no *Doyle*-type error because it falls within the rule established by *Commonwealth* v. *Habarek*, 402 Mass. 105, 109-110 (1988). Here the Commonwealth argues that the testimony was necessary to avoid juror confusion as to why the defendant stopped speaking to the officers. However, in *Habarek* the "testimony on direct examination concerning the defendant's request to end the interrogation was introduced in the context of the entire conversation, and was admitted so as not to leave the jury wondering why the interview ended abruptly. The officer's testimony on redirect examination was properly admitted in response to the inferences left by defense counsel on cross-examination. At no time did the Commonwealth use the defendant's statement as evidence of his guilt, or to impeach an explanation subsequently offered at trial." *Id.* See *Commonwealth* v. *Waite*, 422 Mass. 792, 798

---

[11]The defendant does not argue that his statements to police were involuntary.

(1996) (discussing *Commonwealth* v. *Habarek, supra*).[12,13]

In this case, there is no evidence of juror confusion, and the defendant did nothing that could arguably be said to create such confusion as in *Commonwealth* v. *Habarek, supra.* Furthermore, if juror confusion did exist, it certainly would not be necessary for *two* officers to testify as to the reason the interview terminated.[14] We conclude it was a *Doyle*-type error for the two officers to mention that the defendant chose to invoke his right to remain silent. See *Commonwealth* v. *Cobb, supra* at 520 (eliciting testimony concerning defendant's statement indicating intention to invoke his right to remain silent is "grave constitutional error").

Equally troublesome is the prosecutor's use of the defendant's statement of his intention to remain silent in her closing argument. We disagree with the Commonwealth's contention that, in her closing, the prosecutor stopped short of commenting on the defendant's right to remain silent. Although she did not explicitly say "he remained silent," the clear implication of her statement that the defendant "doesn't point out any discrepancies in what they said" was that, if the defendant were innocent,

---

[12]Where testimony is admitted to eliminate possible confusion or to explain the context of the conversation, at the request of the defendant, the judge should instruct the jury at the time of testimony that the defendant has a constitutional right not to answer questions asked by police, that the testimony was admitted only for the purpose of explaining why the interview ended, and that the jury should not draw any adverse inference against the defendant because of his silence.

[13]In *Commonwealth* v. *Waite*, 422 Mass. 792, 798-799 (1996), defense counsel promptly and successfully objected to a question that would have implicated post-Miranda silence. We held that, because no answer was given to the question asked, there was no error. Moreover, we noted that, "[i]n most cases a defendant's inculpatory statement that terminates in the middle of interrogation will contain enough information that the questioning appears complete to jurors. Furthermore . . . [d]uring . . . voir dire [to determine the voluntariness of the defendant's statements to police] prosecutors and judges must make efforts to discern ways to present the questioning as complete, so as to prevent the need to explain a seemingly abrupt end to [an] interrogation." *Id.* at 799 n.8.

[14]The defendant correctly points out that the detective had previously stated that the interview lasted only fifteen minutes, so the jury were on notice that the interview was short.

he would have done so, but instead chose to invoke his right to stop talking.[15] Thus, the prosecutor's closing argument also constituted a *Doyle*-type error.[16]

We, therefore, must now decide whether these errors require reversal. We first determine whether these errors were raised below. Although the defendant did object to the testimony of the Seattle detective, the objections were not based on the defendant's right to remain silent.[17] When the FBI agent testified about the same incident, defense counsel did object, but of-

---

[15]The fact that, earlier in her closing, the prosecutor did tell the jury that the defendant did not have to talk to police or take the stand and testify does not remedy the error.

[16]The cases cited by the Commonwealth do not help its argument. In *Commonwealth* v. *Martino*, 412 Mass. 267, 283 (1992), we stated that it was proper for the prosecutor to comment on an omission from a statement a defendant gave police, where the defendant never chose to exercise his right to remain silent. In *Commonwealth* v. *Teixera*, 396 Mass. 746, 752 (1986), we stated that a prosecutor could comment on a defendant's silence or failure to deny charges in circumstances where a defendant might be expected to speak. The case concerned a defendant's failure to deny paternity to the mother of his child.

[17]The objection was as follows:

> THE WITNESS: "While we were talking with the defendant, I stated to him that I felt . . . to me it seemed incredible that —"      .
>
> DEFENSE COUNSEL: "Pray your Honor's judgment."
>
> THE PROSECUTOR: "What did you specifically say to him?"      .
>
> THE WITNESS: "I said —"
>
> DEFENSE COUNSEL: "Objection, judge."
>
> THE JUDGE: "Overruled [grants request for side bar]."
>
> DEFENSE COUNSEL (at side bar): "[T]his isn't in any report."
>
> (The judge denied objection on these grounds.)
>
> DEFENSE COUNSEL: "My first objection is to the witness saying something to him that seemed to be incredible . . . . The witness's subjective description of something as being incredible."
>
> THE JUDGE: "Overruled."
>
> THE WITNESS (back in open court): "I told [the defendant] that — I found the story incredible that sperm could still be present in the child's mouth after so long a period of the transfer. And at this point the defendant seemed to reflect; his eyes kind of teared up; and at that point *he said he didn't think he should say anything more*. That's when

fered no ground.[18] Similarly, defense counsel did not object to that aspect of the prosecutor's closing that referred to the defendant's right to remain silent, but rather, at a later juncture, objected to the prosecutor's injecting personal opinion into the closing.[19]

---

the interview was concluded." (Emphasis added.)

DEFENSE COUNSEL: "Move to strike."

THE JUDGE: "Let me say this. Denied."

[18]When the FBI agent said that the defendant did not want to talk anymore, and that was why they could not clear up "details," defense counsel said, "Pray your Honor's judgment." The judge responded, "Yes," and nothing further was said or done regarding this point.

[19]Regarding the testimony of the Seattle detective, the issue was not properly preserved because the defendant objected and moved to strike on grounds other than the constitutional issue. See *Commonwealth* v. *Lyons*, 426 Mass. 466, 473 & n.12 (1998) (defendant's asserted error objected to on different ground than raised on appeal; proper standard of review is substantial likelihood of miscarriage of justice); *Commonwealth* v. *Rivera*, 425 Mass. 633, 636 & nn. 1 & 2 (1997) (defendant's objection to use of affidavit based on best evidence rule did not preserve constitutional error). In his brief, defense counsel focuses on the motion to strike. However, read in context, the record does not support the contention that the objection to the testimony was on constitutional grounds.

Regarding the FBI agent's testimony, although Mass. R. Crim. P. 22, 378 Mass. 892 (1979), does not require a party to state the grounds for an objection, see *Commonwealth* v. *Rivera*, *supra* at 636, the objection must be "sufficient" so that the defense counsel "makes known to the court the action which he desires the court to take or his objection to the action of the court." Mass. R. Crim. P. 22; *Commonwealth* v. *Rancourt*, 399 Mass. 269, 275 n.8 (1987), quoting Mass. R. Crim. P. 22. See *Commonwealth* v. *Lyons*, *supra* at 473 n.12 (defendant's asserted error not brought to judge's attention at trial); *Commonwealth* v. *Cancel*, 394 Mass. 567, 571 (1985) (holding that general objection insufficient in circumstances); *Commonwealth* v. *Bartie*, 23 Mass. App. Ct. 479, 480 (1987) (objection improper because it did not make clear to judge grounds asserted on appeal; record suggests that objection for entirely different grounds); *Commonwealth* v. *Houghtlin*, 16 Mass. App. Ct. 691, 695 (1983) (more focused objection would have alerted judge to substance of particularized arguments urged on appeal and enabled judge to preclude admission of evidence).

There was no timely objection to the prosecutor's closing, nor had defense counsel made a motion in limine to prevent the prosecutor's use of the officers' testimony. See *Commonwealth* v. *Woods*, 419 Mass. 366, 371 n.8 (1995), citing *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 268 (1992). Furthermore, any objection to the closing would have to address specifically the constitutional issue in order to preserve the objection. See *Commonwealth* v. *Lyons*, *supra* at 473.

Because the defendant did not properly object to the witnesses' statements or the closing argument, we review the errors to determine whether a substantial likelihood of a miscarriage of justice exists.[20] See *Commonwealth* v. *Johnson*, 429 Mass. 745, 747, 748-479 (1999), and cases cited; *Commonwealth* v. *Passley*, 428 Mass. 832, 835 (1999).

In determining whether the use of the statements regarding the defendant's invocation of his constitutional right created a substantial likelihood of a miscarriage of justice, one significant factor to consider is the strength of the evidence against the defendant. The defendant was alone with the victim at the critical time. On the way to the hospital he suggested that internal injuries were the cause of the victim's condition. He threatened suicide if he was blamed for the death, at a time when no one was being blamed.

DNA tests proved that his sperm were found in the victim's mouth, for which there was no exculpatory credible explanation. In November, 1992, the defendant denied having oral sex with the victim's mother,[21] but changed his story when he spoke to the Seattle detective and FBI agent at the time of his arrest. When he testified at trial, the defendant claimed that the law enforcement officials in Seattle misinterpreted the time he said he had oral sex with the mother and claimed that it occurred late in the evening of the day before the victim's death. This change could be seen as an attempt to make his story more believable. At trial defense counsel advanced a new theory as to how the sperm got into the victim's mouth: through the CPR the mother performed on the baby the morning of her death. This explanation was plainly at odds with the testimony of the fire fighter who tried to revive the victim within minutes of her being discovered injured in the apartment, who testified that the victim's jaw was "clenched shut" and her "teeth were so tight that you couldn't do anything to the teeth."

The defendant also made changes in his version of events that appear as an attempt to adapt his testimony to the Commonwealth's evidence. See *Commonwealth* v. *Sherick*, 401

[20]Although in *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-698 (1983), we discussed the standard set out in *Chapman* v. *California*, 386 U.S. 18 (1967), which put the burden on the State to prove error harmless beyond a reasonable doubt, the proper standard for unpreserved error is substantial likelihood of a miscarriage of justice.

[21]At trial the mother denied having oral sex with the defendant.

Mass. 302, 304 (1987). Finally, there was evidence of a consciousness of guilt because the defendant moved to Seattle within a few weeks of his learning that sperm were found in the victim's mouth and his giving blood for DNA analysis. See *Commonwealth* v. *Carrion*, 407 Mass. 263, 277 (1990) ("Flight is perhaps the classic evidence of consciousness of guilt"), and cases cited.

In this context we conclude that the testimony of the Seattle detective and the prosecutor's closing pales into insignificance, and, therefore, no substantial likelihood of a miscarriage of justice exists.[22]

5. *Relief under G. L. c. 278, § 33E.* We have reviewed the entire record pursuant to G. L. c. 278, § 33E, and conclude that a reduction in the murder verdict or a new trial is not required.

*Judgments affirmed.*

---

[22]The defendant argues that the *Doyle*-type errors constitute reversible error because the outcome of the case turned on the defendant's credibility rather than the evidence. We disagree. This case is unlike *Commonwealth* v. *Egardo*, 426 Mass. 48, 53 (1997), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), where the use of the defendant's silence "deprived the defendant of an otherwise available, substantial ground of defence." The two cases the defendant cites do not help his argument. *Commonwealth* v. *Rios*, 412 Mass. 208 (1992), dealt with a defendant who was denied the right to be present in the court room during trial. *Commonwealth* v. *Ford*, 397 Mass. 298 (1986), turned solely on credibility because the defendant claimed the police were lying when they said he confessed.