NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12496


COMMONWEALTH  vs.  JAMESON PHUON.


Middlesex.     May 8, 2020.  -  October 19, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, & Budd, JJ.[1]


Homicide.  Firearms.  Jury and Jurors.  Practice, Criminal, Jury
    and jurors, Verdict, Duplicative convictions, Lesser
    included offense, Capital case.



Indictments found and returned in the Superior Court
Department on February 24, 2011.

The cases were tried before Heidi E. Brieger, J.


Theodore F. Riordan (Deborah Bates Riordan also present)
for the defendant.
Timothy Ferriter, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  Just after midnight on January 1, 2011, shots

were fired at a New Year's Eve house party.  The defendant was

convicted of murder in the first degree of one victim, as well

_____

[1] Chief Justice Gants participated in the deliberation on
this case prior to his death.

as on twenty-four other indictments that included various firearms charges and seventeen charges related to the injuries he inflicted on several other victims.

On appeal, the defendant argues that he is entitled to a new trial on the murder charge because the verdict slip indicated that the jury found him guilty of both murder in the first degree and murder in the second degree. He also argues that his two convictions of possession of ammunition must be dismissed because they are lesser included offenses of his convictions of possession of a loaded firearm. Finally, the defendant seeks to have his murder conviction reduced or to be granted a new trial pursuant to G. L. c. 278, § 33E. We affirm the defendant's conviction of murder in the first degree and decline to exercise our extraordinary power under § 33E. However, we dismiss the convictions of possession of ammunition as duplicative of the convictions of possession of a loaded firearm.

Background. We summarize the facts as the jury could have found them. Late at night on December 31, 2010, the defendant attended a house party with two friends, Sothy Voeun and Sovanrathanak Binn.[2] Soon after their arrival, the defendant and Voeun had a gang-related disagreement with one or two of the

---

[2] A fourth individual who was with the group remained in the vehicle in which they arrived.

partygoers, which became physical and continued outside.  Voeun retrieved a rifle from the vehicle in which they arrived, and he and the defendant took turns shooting it into the air.  The group then left the area and drove to the home of Naroht Chan, where they obtained a second rifle; they then returned to the party.  Voeun and the defendant, who was wearing a face covering, walked to the door, each carrying a rifle.  The defendant kicked the door in, entered, and yelled, "Don't move or I'll shoot."  He pushed a table toward Corinna Oeur.  When Oeur pushed the table toward the defendant, he shot her in the torso.  The defendant also shot seven others in the room before leaving the scene.  As the group drove away, the defendant said, "I think we might have got them" and "I think I just killed somebody."

Police responded to the scene at approximately 1:25 A.M. Oeur, who was found unresponsive, succumbed to gunshot wounds to her heart and lungs.  Others at the party suffered from various serious, but nonfatal, injuries.  A search of Chan's home yielded two rifles, one of which was fitted with a high capacity magazine.  Casings recovered from the scene matched casings that were discharged from each firearm.

At trial, the defendant argued that he had been misidentified.  In support of that theory, he presented an

expert on eyewitness identification who testified as to factors that may render identification witnesses unreliable.

Discussion. 1. Verdict on murder charge. At the conclusion of their deliberations, the jury announced and affirmed in open court that the defendant was guilty of murder in the first degree on the theories of deliberate premeditation and felony-murder. The verdict subsequently was recorded. While polling the jury as to the murder conviction at the request of trial counsel, the clerk noticed that the verdict slip indicated that the defendant was guilty of murder in the first degree as well as murder in the second degree, so the clerk brought the matter to the judge's attention.

In conferring with both parties outside the presence of the jury, the judge stated that the verdict was not inconsistent because the finding of guilty of murder in the second degree was "simply a lesser included guilty finding that is subsumed by the guilty in the first degree." However, she proposed to have the clerk continue to poll the jury to ask "how he or she finds on those counts." After speaking with the defendant, trial counsel waived further polling. The jury thereafter were discharged.

The defendant now argues that he should be given the benefit of what he calls an "ambiguity" in the verdict slip and that he is entitled either to a new trial or to a reduction in the murder conviction to murder in the second degree. We note

that the defendant, who expressly declined the judge's offer to make inquiry of the jury regarding the verdict slip, contends on appeal that the judge should nevertheless have done so.  We agree that the better practice would have been to make inquiry of the jury prior to discharging them, either by polling or sending them back to the jury room to resolve any questions about the verdict slip, if for no other reason than to foreclose the possibility of the issue resurfacing on appeal.[3]

However, as the defendant waived his opportunity to poll or otherwise request that the jury clarify their verdict, we evaluate his claim to determine whether there is a substantial likelihood of a miscarriage of justice.  See Commonwealth v. Fowler, 431 Mass. 30, 34 (2000); Commonwealth v. Lawson, 425 Mass. 528, 531 (1997).  We conclude that the answer is no.

---

[3] An instruction explicitly stating that the jury need not consider the charge of murder in the second degree if they found the defendant guilty of murder in the first degree might have helped to avoid any misunderstanding the jury may have had in this regard.  The Model Jury Instructions on Homicide 43 (2018) provide:  "If you are unable to agree unanimously that the Commonwealth has met its burden to prove beyond a reasonable doubt any [either] of these theories of first degree murder, you shall consider whether the Commonwealth has proved the defendant guilty beyond a reasonable doubt of murder in the second degree."  We note, however, that in explaining the different theories and degrees of murder, the judge correctly instructed the jury that they had the duty to find the defendant guilty of the most serious offense that the Commonwealth proved beyond a reasonable doubt.  Later, after discussing each theory of murder in the first degree listed on the verdict slip, the judge stated that murder in the second degree was a lesser included offense that was "another possibility."

The defendant relies on Commonwealth v. Dunn, 478 Mass. 125, 137 (2017), to argue that because the jury were instructed to find him guilty of "the most serious offense that the Commonwealth has proved beyond a reasonable doubt," the fact that the jury indicated that the defendant was guilty of murder in the second degree suggests that that was the highest offense proved. This argument is unavailing.

The jury were properly instructed on each of the three theories of murder in the first degree: deliberate premeditation, extreme atrocity or cruelty, and felony-murder. At the conclusion of their deliberations, they specified on the verdict slip that the defendant was guilty of murder in the first degree on two of the three theories presented to them: deliberate premeditation and felony-murder. The mere fact that the jury additionally marked an "X" next to "Guilty of Lesser Included Offense of Murder 2nd Degree" on the verdict slip in no way demonstrates that murder in the second degree was the highest degree of guilt they found. To the contrary, it is clear from the verdict slip that the jury determined that murder in the first degree (by way of two separate theories) was the most serious murder offense that the Commonwealth proved beyond a reasonable doubt. It appears that the jury simply found the elements that comprise murder in the second degree in addition to having found the elements of murder in the first degree on

the theories of premeditation and felony-murder,[4] or alternatively, they did not find the defendant guilty of murder in the first degree on the theory of extreme atrocity or cruelty so instead found him guilty of murder in the second degree as to this theory.[5]

Moreover, in the judge's instructions, the only underlying felony presented to the jury for consideration with regard to the theory of felony-murder was armed home invasion, which is punishable by life imprisonment. By finding the defendant

---

[4] We note that, here, the elements of murder in the first degree on a theory of deliberate premeditation coincide with the elements of murder in the second degree. The elements of the murder in the first degree on a theory of deliberate premeditation are that (1) the defendant caused the death of the victim, (2) the defendant intended to kill the victim, and (3) the defendant acted with deliberate premeditation. The elements of murder in the second degree are that (1) the defendant caused the death of the victim and (2) the defendant intended to kill the victim, to cause grievous bodily harm to the victim, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result. Here, by marking that the defendant was guilty of murder in the first degree on a theory of deliberate premeditation, it is clear that the jury plainly found all three elements that comprise murder in the first degree on that theory. As the first two of those three elements comprise murder in the second degree, the jury appear to have indicated that on the verdict slip as well.

[5] The elements of the murder in the first degree on a theory of extreme atrocity or cruelty are that (1) the defendant caused the death of the victim; (2) the defendant intended to cause grievous bodily harm to the victim, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result; and (3) the defendant acted with extreme atrocity or cruelty.

guilty on a theory of felony-murder, where this life felony was the only underlying felony on which such a conviction could be premised, the jury had to have found the defendant guilty of murder in the first degree. G. L. c. 265, § 1.

Even assuming, as the defendant argues, that the verdict slip did not clearly indicate the will of the jury, the verdict announced by the foreperson in open court and affirmed unanimously by the jury removed any doubt that it was the jury's intention to convict the defendant of murder in the first degree on the theories of deliberate premeditation and felony-murder. See Dunn, 478 Mass. at 136, quoting Commonwealth v. Harris, 23 Mass. App. Ct. 687, 692 (1987) ("The only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict given in and assented to in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court"); Lawrence v. Stearns, 11 Pick. 501, 502 (1831).

Thus, although it is true that "[i]f there were any reasonable possibility that the jury intended the lesser verdict[] we would give the defendant the benefit of the lesser conviction[,] there is no such reasonable possibility here." Dunn, 478 Mass. at 137. We therefore decline to disturb the verdict of murder in the first degree.

2. <u>Duplicative convictions</u>. The jury also found the defendant guilty on each of the other indictments, including two counts of unlawful possession of a loaded firearm, and two counts of unlawful possession of ammunition. Both parties agree that the defendant was convicted of both possession of a loaded firearm and possession of the ammunition contained within it, making the latter convictions duplicative. At the conclusion of the trial, the convictions of possession of ammunition were placed on file without objection from the defendant. However, there is a possibility, albeit slim, that the defendant could be sentenced on those convictions. This would subject him to being punished a second time for possession of the same ammunition. Because such an outcome would violate the principles of double jeopardy, we hereby dismiss the two convictions of possession of ammunition. See <u>Commonwealth</u> v. <u>Johnson</u>, 461 Mass. 44, 54 (2011).

3. <u>Relief pursuant to G. L. c. 278, § 33E</u>. Finally, the defendant asks us to exercise our extraordinary power under G. L. c. 278, § 33E. Upon review of the entire record, we discern no error that resulted in a substantial likelihood of a miscarriage of justice. We therefore decline to order a new trial or to reduce the degree of guilt under § 33E.

Conclusion.  For the foregoing reasons, the defendant's convictions are affirmed, with the exception of the convictions of possession of ammunition, which are hereby dismissed.

So ordered.