COMMONWEALTH vs. TERRI CLEMENTS.

No. 92-P-117.

Essex. November 4, 1993. - March 8, 1994.

Present: BROWN, PERRETTA, & KASS, JJ.

Rape. Indecent Assault and Battery. Practice, Criminal, Verdict, Assis-
  tance of counsel, Mistrial, Disclosure of evidence. Attorney at Law,
  Conflict of interest. Evidence, Other offense, Fresh complaint.

At a criminal trial, the jury's verdicts were not rendered null and void by
  the circumstances that they were received in writing rather than an-
  nounced orally by the foreman; the receipt of the verdict slips from the
  foreman, as provided by Mass.R.Crim.P. 27(a), followed immediately
  by the clerk's oral announcement of the verdicts in open court and the
  jury's collective affirmation of the verdicts as announced, was legally
  sufficient. [206-208]
None of the alleged deficiencies in the legal representation afforded to a
  criminal defendant amounted to ineffective assistance of counsel so as
  to require reversal of her convictions. [208-210]
At the trial of a defendant charged with rape and sexual abuse of two of
  her children, no material prejudice to the defendant appeared from the
  circumstances that the defendant's attorney, at a time prior to the de-
  fendant's arraignment, had represented in a divorce proceeding an indi-
  vidual who was eventually charged with and, represented by other
  counsel, pleaded guilty to, sexual abuse of the defendant's children.
  [210-211]
In the context of the trial of a defendant charged with rape and sexual
  abuse of two of her children, the judge properly exercised his discretion
  in denying the defendant's motion for a mistrial, based on the prosecu-
  tor's failure to make available a potentially exculpatory videotape re-
  cording of which the defense learned on the sixth day of trial, where
  defense counsel was afforded sufficient time to examine the newly pro-
  duced material and to make effective use of it in presenting her case.
  [211-213]
At the trial of a defendant charged with rape and sexual abuse of two of
  her children, a third child's testimony that he had been sexually mo-
  lested by the defendant and others was properly admitted to prove the
  existence of a common scheme or pattern of conduct. [213-214]
At the trial of a defendant charged with rape and sexual abuse of two of
  her children, the judge properly admitted, under the fresh complaint
  doctrine, evidence of the children's complaints made to third parties
  between two and three years after the events complained of, and be-

tween fourteen and twenty months after the defendant no longer had dominion over the children. [214]

INDICTMENTS found and returned in the Superior Court Department on July 13, 1988.

The cases were tried before *Patrick F. Brady*, J., and a motion for a new trial was heard by him.

*James L. Sultan* (*Wimberley Burton* with him) for the defendant.

*S. Jane Haggerty*, Assistant District Attorney (*Janice W. Howe*, Assistant District Attorney, with her) for the Commonwealth.

KASS, J. Terri A. Clements was convicted by a jury on two indictments for rape and abuse of a child under age sixteen (G. L. c. 265, § 23) and two indictments for indecent assault and battery on a child under age fourteen (G. L. c. 265, § 13B). In her appeal, Clements argues six categories of error. We affirm.

1. *Claimed error in taking the jury's verdicts.* On the ground that the clerk of the trial session failed to have the foreman of the jury announce the verdicts by word of mouth when they were returned, Clements urges that those verdicts are null and void. In so saying, Clements relies on *Commonwealth* v. *Tobin*, 125 Mass. 203, 206-207 (1878), in which the court required that the foreperson of the jury deliver the verdict by word of mouth in open court, "under the sense of responsibility attending such an utterance in the face of the court and of the public, and in the case of a felony, of the accused." *Id.* at 207. The clerk then records the verdict on the back of the indictment and asks the jury collectively to affirm the verdict as the clerk has proclaimed it by an incantation along the following lines: " '[H]earken to your verdict as the court has recorded it. You, upon your oaths, do say that the prisoner at the bar is guilty,' (or 'not guilty.') 'So you say, Mr. [or Madame] Fore[person], and so, . . . you all say.' " See *Commonwealth* v. *Kalinowksi*, 12 Mass. App. Ct. 827, 830 (1981).

In this case, the foreman did not deliver the verdicts by word of mouth. The exhange between the clerk and the jury was as follows:

> CLERK: "Mr. Foreman, has the jury agreed upon a verdict?"
>
> FOREMAN: "Yes."
>
> CLERK: "May I have the papers [verdict slips] please?"
>
> (Foreman hands documents to the clerk, clerk hands documents to judge, who examines them and returns them to clerk)
>
> CLERK: "Mr. Foreman, members of the jury, hearken to your verdicts as the Court has recorded them. On Indictment 13854, Commonwealth v. Terri Clements, charging her with rape and abuse of a child, the jury finds the defendant guilty of the offense as charged. So say you, Mr. Foreman, and members of the jury, you all say?"
>
> "(Jury responds affirmatively en masse.)"

That procedure was repeated for each of the other three indictments, and each time the jurors responded affirmatively after the clerk read the verdict slip.[1]

Although the old practice was to have the foreperson give voice to a verdict, the taking of a verdict in writing from the foreperson and the announcement of that verdict in open court does not vitiate the purpose of the older ceremony. The substitution of written recital of a jury verdict for oral recital

---

[1] Defense counsel did not object at any point during the proceedings involving return of the verdicts. Ordinarily we would not consider a claim of error not brought to the attention of the trial court. Perhaps because the steps taken to insure accurate receipt and recordation of a jury's verdict are at the core of whether there has been a fair trial, we have considered such a question before, even though not raised at trial. See *Commonwealth* v. *Morgan*, 30 Mass. App. Ct. 685, 695-696 (1991).

was made by Mass.R.Crim.P. 27(a), 378 Mass. 897 (1979), which provides: "The jury shall file a verdict slip with the clerk upon the return of the verdict." Using a verdict slip is a practice drawn from rule 535(a) of the Uniform Rules of Criminal Procedure (1974), one which the drafters of the Massachusetts rules hoped might "help reduce errors in the rendering and announcing of verdicts." Reporters' Notes to Mass.R.Crim.P. 27(a), Mass. Gen. Laws Ann., Rules of Criminal Procedure, at 517 (Law. Co-op. 1980). The sense of responsibility remarked upon in *Commonwealth v. Tobin*, 125 Mass. at 207, is achieved by the foreperson's handing up of the verdict slip. The requisite openness is achieved when the clerk, in the presence of the jury, the defendant, and the public, proclaims the verdict by speech, asks the jurors collectively to affirm the announced verdict by mouth, and the jurors do so. See *Commonwealth v. Martell*, 407 Mass. 288, 293-294 (1990); Smith, Criminal Practice and Procedure §§ 1966 & 1967 (2d ed. 1983 and 1993 Supp. at 126-127). Contrast *Commonwealth v. Morgan*, 30 Mass. App. Ct. 685, 696-696 (1991), in which a verdict was not announced in public at all, either by the foreperson of the jury or the clerk. The announcement and public affirmation of the verdicts in the instant case were legally sufficient.

2. *Ineffective assistance of counsel.* There were at trial six occasions of what appellate counsel describes as "deficient performance" of trial counsel before or during trial. Those points were put to the trial judge in a motion for a new trial on the ground of ineffective assistance of counsel. In considering the arguments, the judge correctly instructed himself in the applicable law as stated in: *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (counsel's failings must be grave and fundamental); *Commonealth v. Saferian*, 366 Mass. 89, 96 (1974) (serious incompetency, inefficiency, or intention falling measurably below what might be expected from an ordinary fallible lawyer); *Commonwealth v. Satterfield*, 373 Mass. 109, 115 (1977) (better work might have accomplished something material for the defense); and *Commonwealth v. McGann*, 20 Mass. App. Ct. 59, 61 (1985) (State

and Federal Constitutions do not guarantee a perfect defense). We accept, as supported by the record, the subsidiary findings made by the judge in a memorandum of decision denying the motion for a new trial, and are deferential to his ultimate conclusions. *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991).

*First.* Appellate counsel considers it inexcusable that trial counsel did not consult with and present as a witness an expert on sexual abuse of children. Such an expert, the defendant now suggests, would have criticized the interviewing methods of Ginny Catalfamo, a sexual abuse treatment clinician called by the prosecution, and would have helped trial counsel and the jury understand why a dispute over their custody might have influenced the testimony of the Clements children. Neither point touches on something material for the defense. Pecking away at Catalfamo's clinical methodology would have been a marginal attack on a witness, and defense counsel's examinations and arguments at trial demonstrate that she understood perfectly well the possible bearing of an underlying custody controversy on the charges of sexual molestation.

*Second.* Appellate counsel heaps scorn on trial counsel for failing to interview Paula J. Kolapakka, a lawyer who represented Clements in her custody dispute,[2] but neither the affidavit offered by Ms. Kolapakka nor appellate counsel deigns to detail any information adverse to the prosecution that Ms. Kolapakka was ready to unwrap.

*Third.* Arguably, it may have been risky to permit Clements to meet uncounselled with a private investigator hired by her husband, William Clements, who was a codefendant, but nothing remarkable, let alone devastating, resulted from the interview. As the trial judge observed, "the [investigator] interview was a very minor aspect of the case."

---

[2] In 1987, custody of the Clements children had been placed with Donna Dukeman, Terri Clements' sister. Terri Clements in 1988 brought a proceeding in Probate Court to remove Dukeman as guardian and to regain custody of her children.

*Fourth.* The Clementses' eight year old son, Archy,[3] testified that on the day his family moved from one house to another in May, 1985, his mother barricaded a bedroom with a piece of furniture, undressed, and required him to perform sexual acts with her. Appellate counsel berates trial counsel for not calling some five witnesses (among them, particularly William Clements' parents) who would have testified that Terri Clements on that moving day was suffering from a painful back disorder and was in no position to shove furniture around or engage in sexual acts. Evidence was, in fact, received about the defendant's back problem on the day in question. The trial judge took the trouble to review the testimony of the avowedly indispensable witnesses at the separate trial of William Clements. He was not impressed that any of the witnesses said anything that might have been of material assistance to the defendant. There was no error in the judge's conclusion.

*Fifth* and *sixth* are variations on the points under *first*, i.e., by reason of the failures there adverted to, trial counsel did not produce a useful expert at trial and did not cross-examine Catalfamo searchingly enough. These examples of hindsight require no further comment.

3. *Asserted conflict of interest of defendant's trial counsel.* Ms. Sylvia McMeen was appointed[4] to represent Clements in time to be present at Clements' arraignment on July 20, 1988. Before that date, Ms. McMeen had been representing one David Morton in a divorce. A judgment of divorce nisi was entered September 20, 1988, and there was no showing that McMeen was active on behalf of Morton thereafter. Morton, it later developed, was one of those to whom the Clementses had prostituted their children. In October of 1989, Morton was indicted for sexual abuse of the Clements children. He was represented by other counsel in that case and eventually pleaded guilty. On the basis of that tenuous

---

[3]A fictitious name.

[4]The appointment was made by the Committee for Public Counsel Services.

connection, appellate counsel attempts to assert a disabling conflict of interest on the part of trial counsel.

Morton's divorce case and the case against the Clementses were unrelated. In arguing the motion for a new trial, appellate counsel for Clements conceded that there was no actual conflict but speculates that Ms. McMeen may have learned something during her representation of Morton that would have aided Clements' defense. What that may have been counsel was not able to describe to the trial judge. In the absence of explanation why Ms. McMeen would not have used her best efforts to secure Clements' acquittal, the judge, properly, concluded there had been no potential conflict of interest. In asserting a conflict of interest on the part of counsel, the defendant may not rely on speculation. *Commonwealth* v. *Soffen*, 377 Mass. 433, 438 (1979). If, as here, there is no actual conflict, there is a burden on the defendant to demonstrate in what way a potential conflict materially prejudiced her. *Commonwealth* v. *Walter*, 396 Mass. 549, 559 (1986). No divergent interest on the part of counsel emerged in her trial performance. See *Commonwealth* v. *Filippidakis*, 29 Mass. App. Ct. 679, 683 (1991).

4. *Motion for a mistrial.* While being cross-examined by defense counsel, one of the Clements children, Barney,[5] mentioned that Catalfamo, the sexual abuse treatment clinician who worked with the Clements children,[6] had made a videotape of one of her conversations with the Clements boys and that the boys had later watched the videotape. This was on the sixth day of trial and was the first time that Ms. McMeen heard of the existence of a videotape of conversations with the boys, who were the major prosecution witnesses. After the jury were dismissed for the day, Ms. McMeen protested to the judge that the government had failed in its obligations, under law and a pretrial order, to make available potentially exculpatory material requested by the defense. The prosecutor expressed herself as equally sur-

---

[5] A fictitious name.
[6] Catalfamo was employed by the Lowell Center for Family Development, a private nonprofit mental health group.

prised; she had known nothing about the tape, and it was not in her possession. See *Commonwealth* v. *Donahue*, 396 Mass. 590, 596 (1986); *Commonwealth* v. *Daye*, 411 Mass. 719, 733-735 (1992).

Next day the prosecutor reported to the judge that a detective on the case had made contact with Catalfamo and had obtained the tape from her.[7] That evening, the trial judge, who handled the entire episode with great skill, viewed the tape and, having come to the conclusion that it contained information material to the defense, ordered it made available to defense counsel and the prosecutor. Thereupon Ms. McMeen announced her intention to move for a mistrial. The judge thought a mistrial too drastic a step. Not least of all, the wear and tear and absence from school of the child witnesses had to be considered. He suspended trial proceedings to allow Ms. McMeen to review the entire videotape. Defense counsel would be permitted to recall the children, who had already testified to explore any matters — inconsistencies with their trial testimony, as it turned out — raised by the videotape.

When trial resumed later that day, it was to continue the direct examination of another of the Clements children, Edward.[8] Defense counsel was able to cross-examine Edward with the benefit of recent viewing of the videotape. The videotape itself was admitted in evidence at the conclusion of Catalfamo's testimony on the tenth day of trial. Before the jury viewed the tape, the judge gave limiting instructions, to which neither party had an objection, that the jury were to consider what they would see and hear, not as substantive evidence but as material bearing on the credibility of the child witnesses. The judge also told the jury that the tape could be considered by them as bearing on whether there existed a common scheme or plan bearing on the intent of the defendant.

---

[7]A police detective had learned of the tape's existence, although he had not seen it. It is not clear from the detective's examination by the trial judge whether he learned about the tape before trial or during trial.

[8]A fictitious name.

When defense counsel pressed her motion for a mistrial, the judge observed that the videotape had been made available to the jury at the request of the defense, which had used the tape to advantage in cross-examination. Accordingly, he denied the motion for a mistrial — we think correctly. This was a case where time enough was allowed defense counsel to examine the newly produced material and to make effective use of it in presenting her case. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175-176 (1982). Whether to declare a mistrial is in that large category of decisions of a trial judge involving the application of sound discretion. *Commonwealth* v. *Cassidy*, 410 Mass. 174, 179 (1991). *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 601 (1991). A judge is to consider carefully the alternatives to a mistrial, *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985), and the trial judge did so in the instant case by affording Ms. McMeen time to study, and use with witnesses, what appeared on the videotape. The reasons advanced by the defendant that strategy in the case might have been different had the existence of the tape been known earlier are unpersuasive. Compare *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 308-310 (1984); *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 438-443 (1992).

5. *Evidence of abuse of another child.* Testimony was received over objection[9] from Barney, who was not mentioned in the indictments against the defendant, that he, too, had been sexually molested by his mother, father, and their friends. The basis of defense counsel's objection at trial was that Barney's proposed testimony would be cumulative and prejudicial. On appeal, the argument shifts slightly and urges in addition that Barney's testimony described other bad acts and served to paint the defendant as a bad person. The question is controlled by *Commonwealth* v. *King*, 387 Mass. 464, 470-472 (1982), and *Commonwealth* v. *Odell*, 34 Mass. App. Ct. 100, 102-104 (1993), i.e., admission of evidence to

---

[9]The question of admissibility was raised through a motion in limine made by the government prior to its opening.

prove a common scheme or pattern of operations. Barney's testimony was properly admitted.

6. *Fresh complaint evidence.* Archy was between six and nine years old and Edward was between four and six when the events complained of occurred. Each was warned that he and his siblings would be killed if they spoke of what had happened. Catalfamo, the clinician, Nancy Gingras, an investigative social worker for the Department of Social Services, and Detective James Gauthier of the Salem police department, who had watched an interview of the children over closed circuit television, were each allowed to repeat the stories of abuse testified to by the children. The occasions of the complaint to third persons were from two to three years after the events and from fourteen to twenty months after the defendant no longer had dominion over the children. The judge acted within the discretion conferred and the time limits discussed in connection with child molestation cases in cases such as *Commonwealth* v. *Amirault,* 404 Mass. 221, 228 (1989), and *Commonwealth* v. *Hyatt,* 31 Mass. App. Ct. 488, 491-492 (1991). Compare *Commonwealth* v. *Dion,* 30 Mass. App. Ct. 406, 414 (1991). Contrast *Commonwealth* v. *Snow,* 35 Mass. App. Ct. 836, 839 (1994).

*Judgments affirmed.*
*Order denying motion for*
*new trial affirmed.*