Johnny L. PIPPINS, Appellant,

v.

STATE of Iowa, Appellee.

No. 00–1588.

Supreme Court of Iowa.

May 7, 2003.

Thomas H. Preacher, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, William E. Davis, County Attorney, and Michael J. Walton, Assistant County Attorney, for appellee.

LARSON, Justice.

Johnny L. Pippins was convicted of first-degree robbery and criminal gang participation. His conviction was affirmed on appeal, but the court of appeals reserved Pippins' claim of ineffective assistance of counsel for possible postconviction proceedings. Pippins filed a postconviction-relief action, claiming: (1) his trial counsel was ineffective for failing to call several witnesses, (2) he should have been granted a new trial based on newly discovered evidence, and (3) an alleged conflict of interest of his trial attorney deprived him of his Sixth Amendment rights. The district court denied relief, and Pippins appealed, raising only the conflict-of-interest issue. The court of appeals rejected the postconviction claim, and we granted further review. We affirm the court of appeals and the district court.

## I. *Facts and Prior Proceedings.*

Pippins was charged in September 1996, and the court appointed Murray Bell, a Davenport attorney, to represent him. The trial was originally set for December 9, 1996. On December 2, 1996, Bell filed an application to withdraw, stating:

> 2. That the process of discovery has revealed that one key witness for the State [Cheryl Hillman] has previously been represented by this attorney which creates a conflict of interest.
>
> 3. This attorney has consulted with attorney, Randy J. Hohenadel, who indicates he is willing to accept this case [and] will continue preparation and trial.

WHEREFORE, this attorney prays this Court for an Order Substituting Counsel and for other relief as the Court may deem appropriate.

/s/ _____

Murray W. Bell

No written record was made of the discussion between Bell and the court on Bell's application to withdraw, and Pippins was not present. The court summarized the discussion in a written order dated December 2, 1996:

This Court inquired of Attorney Bell as to the basis of his request. Attorney Bell told the Court that he had represented the alleged victim in this case in the past. He believes that this representation ended approximately three years ago. He did not believe that anything about that representation was involved in this cause nor would it lead to any information that would adversely affect his client or the State of Iowa. He had not spoken to the alleged victim nor could he enunciate any objection on the victim's behalf. He further acknowledged to the Court that he could not articulate any justifiable reason for allowing his withdrawal and appointing substitute counsel. He also informed the Court that the Defendant Johnny Ledell Pippins did not request he withdraw and further his client persisted in Mr. Bell remaining counsel of record.

Given this factual situation, this Court finds no grounds for granting the Application for Substitute Counsel, and the same is hereby denied.

The trial that was set to begin on December 9 was dismissed by the State because it was unable to find a key witness. The case was refiled and set for trial. On May 5, 1997, in a brief proceeding just prior to the beginning of the trial, Bell referred to his earlier application to withdraw and asked that the December 2 ruling from that file be placed in the record. This request was granted, and no new court order was entered with respect to the application to withdraw.

The court's refusal to appoint new counsel was the subject of Pippins' application for postconviction relief, which stated:

Attorney Murray Bell was the Family Attorney of Cheryl Hillman, [and] was forced to represent dual loyalties. And I was not allow[ed] to be heard or even [be] present when [the judge] made his decision to ... [not] remove Murray Bell.

Two issues are raised by this application: the court's denial of Bell's application to withdraw and the failure of the court to afford Pippins a hearing. We do not address the issue of the court's failure to afford Pippins a hearing because, in any event, Bell's earlier representation of the witness, Hillman, was not a "conflict" that would create a Sixth Amendment violation.

Under our Code of Professional Responsibility,

[a] lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment....

DR 5–105(B). Under EC 5–15,

[i]f a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, the lawyer must weigh carefully the possibility that the lawyer's judgment may be impaired or loyalty divided if the employment is accepted or continued. *The lawyer should resolve all doubts against the propriety of the representation.*

(Emphasis added.) We assume Bell acted, as suggested by EC 5–15, in an abundance

of caution when he filed his application to withdraw. However, his characterization of the circumstances as a conflict of interest does not necessarily make it so. When asked by the court for details of the conflict, Bell could not relate any. Neither Bell nor Pippins, at the hearing on his postconviction application, could give any details concerning a conflict. Attorney Bell testified in the postconviction hearing that he did not feel his relationship with Hillman, a prosecution witness, interfered with his representation of Pippins. In response to a question about why he asked to withdraw, he said,

> I believe I filed some type of notice to the Court that I saw that there was a possible conflict of interest and asked for leave to withdraw, I believe.

He further testified that "I didn't know of an actual conflict, but certainly there was . . . there could be an appearance."

## II. *Analysis.*

This case is very different from those in which a conflict of interest is most often found: an attorney's representation of multiple parties or a party and another principal in the *same* legal action. *See, e.g., Holloway v. Arkansas*, 435 U.S. 475, 488, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 437 (1978) (holding reversal required when counsel represented multiple parties); *Glasser v. United States*, 315 U.S. 60, 73, 62 S.Ct. 457, 466, 86 L.Ed. 680, 700 (1942) (requiring attorney to represent codefendant with competing interests is denial of Sixth Amendment right to effective assistance of counsel) (decision called into doubt on other grounds, *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). The Court in *Holloway* said:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . .
> [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

435 U.S. at 489–90, 98 S.Ct. at 1181, 55 L.Ed.2d at 438.

It is undisputed that, as of the time of Bell's application to withdraw, Pippins "persisted in Mr. Bell's remaining counsel of record," apparently because Bell had successfully represented Pippins in an earlier criminal case. The Supreme Court has said that

> [a] District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 1700, 100 L.Ed.2d 140, 152 (1988). In our *Watson* case, we discussed the phenomena of actual and potential conflicts and the legal effects flowing from them:

> A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it "knows or reasonably should know that a particular conflict exists." If an actual conflict existed and the trial court knew or should have known of the conflict, yet failed to make inquiry, reversal is required. If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict

existed and/or whether the defendant made a valid waiver of his right to independent counsel. If, on remand, an actual conflict is found, prejudice is presumed and reversal is mandated. If there is no indication that the trial court knew or should have known of an actual conflict, and defendant made no objection to his representation, then the defendant, in order to obtain a reversal on appeal, must prove that his counsel rendered ineffective assistance by proving that an actual conflict adversely affected counsel's performance.

*State v. Watson,* 620 N.W.2d 233, 238 (Iowa 2000) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 346 (1980) (citations omitted)).

 Pippins contends his attorney had an actual, not just a potential, conflict of interest, and under *Watson* his conviction must be reversed. A determination of whether a conflict exists is a mixed question of fact and law. *Cuyler,* 446 U.S. at 342, 100 S.Ct. at 1715, 64 L.Ed.2d at 342. Because this is a claim of a Sixth Amendment violation, our review is de novo. *Watson,* 620 N.W.2d at 235; *State v. Vanover,* 559 N.W.2d 618, 627 (Iowa 1997). Whether the facts show an actual conflict of interest or a serious potential for conflict is a matter for trial court discretion, and we find an abuse of that discretion only when a party claiming it shows "the discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Vanover,* 559 N.W.2d at 627.

We have found no cases in which a lawyer's previous representation of a prosecution witness in a totally unrelated civil case has resulted in a finding of a conflict of interest. In fact, most cases that have discussed conflicts of interest have involved an attorney who has represented a defendant or a prosecution witness in the current prosecution or simultaneous civil litigation. *See, e.g., Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (defense attorney was representing murder victim at the time of the murder; no conflict found); *Wood v. Georgia,* 450 U.S. 261, 267–68, 101 S.Ct. 1097, 1101–02, 67 L.Ed.2d 220, 227–28 (1981) (joint representation of defendants); *Watson,* 620 N.W.2d at 238–39 (defense attorney's simultaneous representation of defendant and prosecution witness in the same case held to be actual conflict); *Vanover,* 559 N.W.2d at 630–31 (removal of attorney because of likelihood he would be called as a prosecution witness).

 A conflict of interest, we have said, may be found in cases other than dual representation. *Watson,* 620 N.W.2d at 239. The test is whether "an attorney is placed in a situation conducive to divided loyalties." *Id.* (quoting *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir.1991)).

 Even in cases of joint representation, a conflict is not necessarily established if the defenses are not inconsistent. As the ninth circuit has observed,

> common representation is not error per se. There must be some possibility of conflicting interest, and hence of prejudice. Appellants did not identify any possible divergence of interest in the trial court; their briefs to this court suggest none; the government contends that no possible conflict could have existed; and we have found none in our examination of the record.

*Glavin v. United States,* 396 F.2d 725, 727 (9th Cir.1968).

In *Castillo v. Estelle,* 504 F.2d 1243 (5th Cir.1974), the attorney was simultaneously, but in an unrelated civil case, representing a principal prosecution witness, who was the victim of the crime. The court said:

Here [the client/prosecution witness] was not only the victim but also a principal witness for the prosecution. In these circumstances, counsel is placed in an equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness. The risk of such ambivalence is something that no attorney should accept and that no court should countenance, much less create. We hold that the situation presented by the facts of this case is so inherently conducive to divided loyalties as to amount to a denial of the right to effective representation essential to a fair trial.

*Castillo,* 504 F.2d at 1245.

The cases turn on the concept of "divided loyalties" as discussed in *Castillo* or "divergence of interests," as discussed in *Glavin.* The concepts of actual or possible conflicts, for Sixth Amendment purposes, have been explained by one writer, and we believe the issue of conflicts may be clarified by applying that test. It is said that

> [t]here is a *possibility* of conflict ... if the interests of the defendants *may* diverge at some point so as to place the attorney under inconsistent duties. There is an *actual,* relevant conflict of interest if, during the course of the representation, the defendants' interests *do* diverge with respect to a material factual or legal issue or to a course of action.

*Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. at 1723 n. 3, 64 L.Ed.2d at 351–52 n. 3 (Marshall, J., concurring in part and dissenting in part) (emphasis added).

■ The Nebraska Supreme Court has formulated this succinct definition of "conflict" for Sixth Amendment purposes, and we believe it is appropriate here. The court said:

A conflict of interest places a defense attorney in a situation inherently conducive to divided loyalties. The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another; where a lawyer's representation of one client is rendered less effective by reason of his representation of another client; or where it becomes a lawyer's duty on behalf of one client to contend for that which his duty to another client would require him to oppose.

*State v. Turner,* 218 Neb. 125, 354 N.W.2d 617, 622 (1984) (citations omitted).

This lack of a continuing attorney-client relationship has caused other courts to reject claims of conflict. In *United States v. Soto Hernandez,* 849 F.2d 1325 (10th Cir.1988), for example, the defendant claimed his attorney had a conflict of interest because the attorney had previously represented a man named Perez, who the defendant claimed had coerced the defendant into committing the present crime. The court concluded:

> The case before us does not present [a conflict of interest]. The litigation in which [the defense attorney] served as counsel for Perez is totally unrelated to [the attorney's] representation of [the defendant]. A defendant who argues that an actual conflict prevented his attorney from providing effective assistance must "show[] that his counsel *actively* represented conflicting interests."

*Soto Hernandez,* 849 F.2d at 1329 (quoting *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347) (other citations omitted).

*Commonwealth v. Clements,* 36 Mass. App.Ct. 205, 629 N.E.2d 361 (1994), involved a defense attorney who had previously represented a principal figure in a divorce case. The court stated:

> In arguing the motion for a new trial, appellate counsel for Clements conceded

that there was no actual conflict but speculates that [the defense attorney] may have learned something during her representation of [a third party already convicted of a crime involving same victims] that would have aided Clements' defense. What that may have been counsel was not able to describe to the trial judge. In the absence of explanation why [defense counsel] would not have used her best efforts to secure Clements' acquittal, the judge, properly, concluded there had been no potential conflict of interest. In asserting a conflict of interest on the part of counsel, the defendant may not rely on speculation.

*Clements,* 629 N.E.2d at 365–66.

Similarly, in *People v. Salsman,* 185 A.D.2d 469, 586 N.Y.S.2d 154 (N.Y.App. Div.1992), the defendant claimed a conflict of interest because his attorney had represented the crime victim ten years before in a divorce proceeding. The court held there was no "significant possibility of a conflict of interest" and rejected the Sixth Amendment claim. *Salsman,* 586 N.Y.S.2d at 155.

### III. *Conclusion.*

We conclude that, in this case, there was not a continuing relationship between the defense counsel and the victim. In fact, Pippins does not claim there was. There are, therefore, no divergent interests that could provide a basis to claim a Sixth Amendment violation. We therefore affirm the court of appeals and the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**