STATE of Iowa, Appellee,

v.

William Victor POWELL, Appellant.

No. 03–0161.

Supreme Court of Iowa.

July 21, 2004.

Linda Del Gallo, State Appellate Defender, and Theresa R. Wilson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, and Paul L. Martin, County Attorney, for appellee.

STREIT, Justice.

Concerned about a potentially powerful conflict on the part of his court-appointed trial counsel, William Victor Powell repeatedly requested appointment of another attorney on his behalf. The district court and court of appeals ruled Powell's alleged conflict was too speculative to require substitution. Because the record before us shows the district court knew of a potential conflict into which it did not sufficiently inquire, we remand for a hearing on Powell's allegations.

## I. Facts and Prior Proceedings

After a break-in at a convenience store in Mason City involving two cases of pilfered pseudoephedrine pills, William Powell was charged with burglary, theft, and possession with intent to manufacture a controlled substance.[1] Susan Flander, a public defender, was appointed to represent him on all three counts.

On September 25, 2002, Powell wrote the district court the following letter:

Dear Clerk of Court,

This letter is in regards to the criminal case enumerated above.

At this time I am requesting the court to substitute my court-appointed counsel for the following reasons:

1. My current counsel, public defender Susan Flander, has withheld material information from me preventing me from making intelligent and informed decisions concerning my defense. I have a right to participate in my own defense. This has created a relationship of mistrust. I can no longer tell when I can believe her or not.

2. She was defense counsel in another criminal case directly related to mine and the possibility exists this person might be called as a witness creating the possibility of a conflict of interest.

3. She was defense counsel on another case with the same circumstances.

4. I am requesting the court appoint someone outside the public defender's office. Cynthia Toos is currently defense counsel for my brother Mike Powell who also might be a defense witness.

5. I would request that the court appoint David F. Eastman of Clear Lake to represent me on a court-appointed basis.

I thank you for your time and consideration of my request. If I can be of any assistance to the court in the timely and smooth conduct of these legal proceedings it would be my privilege to do so.

Respectfully, I am

William Powell

Cerro Gordo County Jail

Powell reiterated his request for substitution of counsel a week later in an application for court-appointed counsel.

The trial court held a hearing on Powell's requests at his arraignment on October 14, 2002. At the hearing, Powell explained:

One of the counts that I'm charged with, possession with intent to manufacture, there's a possibility that one of my defense witnesses, [Ms. Flander] has represented him. In fact ... allegedly

---

1. The possession and burglary charges were filed by trial information on July 11, 2002. See Iowa Code §§ 124.401(4), 713.1, 713.6A (2001). The State filed the theft charge by a second trial information and a motion to consolidate all three charges on October 2, 2002. See id. §§ 714.1(1), 714.2(2). As we shall see, this may explain why the court was unaware of the possession and burglary charges at the hearing on the alleged conflict of interest on October 14, 2002. On October 21, 2002, the district court agreed to consolidate the theft charge with the burglary charge, but not with the possession charge.

some of the material that I was charged with was found in his garage during a drug raid. Well, she defended him on his case and now she's defending me on my case and they're related and there's a possibility he'll be a defense witness in my case.... And my brother, she defended my brother. There's a possibility he's a defense witness. She defended him in a prior criminal case and he's being defended by another public defender now....

The district court denied Powell's request for substitute counsel. The court seized upon the fact Powell had only alleged a possibility of a conflict with witnesses who might be called at trial, not an actual conflict. The court pointed out the case was only two weeks old, and was confident Flander would apply to remove herself from the case if a conflict arose.

When Powell informed the court two charges had been pending for over three months, the court remarked "Well, I don't know anything about those" and did not investigate further. The court asked Flander if she had a problem under *State v. Watson*, 620 N.W.2d 233 (Iowa 2000), our recent Sixth Amendment conflict-of-interest case; Flander denied a problem existed. The court then said:

> [W]e can have another hearing ... at a later date but for now I'm going to deny your application. If it comes to pass that these people do end up being witnesses or whatnot, then we can take another look at it.

The court entered a written order denying Powell's request for substitute counsel "at this time" because he had "failed to demonstrate any actual conflict of interest." The issue, however, was never addressed again.

Powell stipulated to a bench trial on the burglary and theft charges. In exchange, the State agreed to dismiss the possession charge and to recommend concurrent five-year sentences if Powell was convicted. Another judge found Powell guilty of burglary and theft.

At sentencing, the prosecutor initially failed to recommend concurrent terms, and the district court ordered consecutive five-year sentences. When Powell protested, neither the prosecutor nor Flander could find a copy of their agreement. The district court continued with the consecutive sentences. The court said it had "put no weight whatsoever on the State's recommendation...."

Powell appealed. Before the court of appeals, Powell argued the presiding judge (1) failed to adequately inquire into his trial counsel's alleged conflict of interest and (2) erred in imposing consecutive sentences.

The court of appeals held the district court adequately inquired into Powell's allegations of a conflict of interest. The court of appeals reasoned the district court's inquiry was sufficient because it (1) determined that there was, at the time, only a possibility of a conflict and (2) left open the possibility of further inquiry. The court of appeals vacated Powell's sentences and remanded for resentencing before a different judge, because the prosecutor did not fulfill his obligation under the plea agreement. *Cf. State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999).

On further review, Powell contends the court of appeals erred in finding the district court adequately inquired into the alleged conflict of interest on the part of his trial counsel. Based, in part, upon our decision in *Watson*, Powell requests we remand this case to the district court for a hearing on his claim of a conflict.

Neither party challenges the order for resentencing. We address on the conflict-of-interest matter and let stand the court

of appeals' order for resentencing. *See, e.g., In re Marriage of Zabecki,* 389 N.W.2d 396, 401 (Iowa 1986) (acknowledging but declining to exercise discretion to consider all issues on appeal, even those not raised in an application for further review); *see also Bokhoven v. Klinker,* 474 N.W.2d 553, 557 (Iowa 1991) ("[W]e may review any or all of the issues initially raised on appeal ... whether or not they are specifically brought to our attention in the applications for further review.").

## II. Standard of Review

In *Pippins v. State,* we recently explained our standard of review where a defendant alleges a conflict of interest implicating the right to counsel:

A determination of whether a conflict exists is a mixed question of law and fact. Because this is a claim of a Sixth Amendment violation, our review is de novo. Whether the facts show an actual conflict of interest or a serious potential for conflict is a matter for trial court discretion, and we find an abuse of that discretion only when a party claiming it shows the discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.

661 N.W.2d 544, 548 (Iowa 2003) (citations and internal quotation omitted). Elsewhere we have stated "[a] ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000).

## III. The Merits

### A. A Potential Conflict of Interest

■ The question before us is whether the district court abused its discretion when it denied Powell's request for substitute counsel after he alleged his attorney had a conflict of interest. Our analysis is squarely governed by *State v. Watson,* 620 N.W.2d 233 (Iowa 2000), our recent conflict-of-interest case. After surveying recent Sixth Amendment right-to-counsel jurisprudence, in *Watson* we stated:

A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it knows or reasonably should know that a particular conflict exists. If an actual conflict existed and the trial court knew or should have known of the conflict, yet failed to make inquiry, reversal is required. If the record on appeal shows only the possibility of a conflict, then the case must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel. If, on remand, an actual conflict is found, prejudice is presumed and reversal is mandated.

620 N.W.2d at 238 (citations and internal quotations omitted); *see also Mickens v. Taylor,* 535 U.S. 162, 166–76, 122 S.Ct. 1237, 1240–46, 152 L.Ed.2d 291, 300–07 (2002).

What is a "conflict of interest"?

A conflict of interest places a defense attorney in a situation inherently conducive to divided loyalties. The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another; where the lawyer's representation of one client is rendered less effective by reason of his representation of another client; or where it becomes a lawyer's duty on behalf of one client to contend for that which his duty to another client would require him to oppose.

*Pippins,* 661 N.W.2d at 549 (quoting *State v. Turner,* 218 Neb. 125, 354 N.W.2d 617, 622 (1984)); *see id.,* 661 N.W.2d at 549 (conflict may involve "divided loyalties" or

a "divergence of interests"); *Watson,* 620 N.W.2d at 239 ("Basically, 'a conflict exists when an attorney is placed in a situation conducive to divided loyalties.'") (quoting *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir.1991)). We have thus stated that there is a possibility of a conflict when "the interests of the defendants *may* diverge at some point so as to place the attorney under inconsistent duties." *Pippins,* 661 N.W.2d at 548–49 (emphasis in original, citation omitted). An actual conflict, in turn, results when such interests "*do* diverge with respect to a material fact or legal issue or to a course of action." *Id.* at 549.

■ Powell's written and oral requests for substitution of counsel put the district court on notice of the possibility of a conflict. Powell told the court there was "a relationship of mistrust," attorney Flander "was defense counsel in another criminal case directly related to mine," and that "this person might be called as a witness." Powell further explained that the contraband he was charged with pilfering was found in this other defendant's garage during a drug raid. Because Powell's allegations raised the possibility of divided loyalties, the court had a duty to inquire into the propriety of Flander's representation of Powell. *See Watson,* 620 N.W.2d at 239 (noting "most conflict of interest cases arise in the context of one attorney representing multiple defendants"); *see also Pippins,* 661 N.W.2d at 548 ("most cases that have discussed conflicts of interest have involved an attorney who has represented a defendant or a prosecution witness in the current prosecution or simulta-

neous civil litigation"); *Watson,* 620 N.W.2d at 238 ("A trial court has the duty sua sponte to inquire into the propriety of defense counsel's representation when it knows or reasonably should know that a particular conflict exists.").

The record before us partially corroborates Powell's claims. In the minutes of testimony upon which Powell was convicted, a police officer testified he executed a search warrant in the garage of a man named Travis Ulrich. In Ulrich's garage, the officer found the remains of a meth lab. The officer specifically noted that only a short time before the search warrant was executed, a very large amount of pseudoephedrine had been stolen from the convenience store Powell was ultimately convicted of burglarizing. He also pointed out the pseudoephedrine packages found in Ulrich's garage were similar to those stolen in the burglary.[2]

In light of these facts, the district court abused its discretion when it denied Powell's request for substitute counsel without conducting a further inquiry. Although the court framed the issue in terms of a potential conflict between Flander and a possible future witness, Powell's claims alerted the judge that Flander's representation of Powell might be hindered by then-existing divided loyalties. These divided loyalties would, it was alleged, result from her alleged representation of a man found in possession of the very contraband Powell was charged with stealing.

While the precise nature of the relationship, if any, between Flander's representations of Powell and Ulrich are unclear

---

**2.** In his brief to this court, Powell also points to online court records which, he alleges, show Flander represented Ulrich for drug offenses around the same time period. As the State correctly points out, these records are not part of the record before us, and we will not consider them in this appeal. *Hughes v.* *Waters,* 204 N.W.2d 599, 600 (Iowa 1973); *see Hawkeye–Security Ins. Co. v. Ford Motor Co.,* 174 N.W.2d 672, 685 (Iowa 1970) ("We do not take judicial notice of records in another case tried in the same court."). This important aspect of Powell's allegations remains uncorroborated.

from the record before us, in our previous discussions of the right to counsel we have long discouraged multiple representation of criminal defendants under circumstances similar to those alleged here. In the context of dual representation of codefendants, for example, we have stated that "the risks involved ... ordinarily outweigh any imagined advantage in appointing the same lawyer to represent defendants jointly charged." *Jackson v. Auger*, 239 N.W.2d 180, 183 (Iowa 1976); *cf. Mickens*, 535 U.S. at 168, 122 S.Ct. at 1241, 152 L.Ed.2d at 302 (although not always fatal, "joint representation of conflicting interests is inherently suspect").

> It will generally be found when two or more are accused of a serious crime, that their interests are to some extent divergent. Often the question will arise as which was the planner of the crime, which took the leading part, or in many other ways each may desire to attempt to throw the onus upon the other.... [I]t is settled that where there may be adverse interests, each defendant is entitled to separate representation.

*State v. Karston*, 247 Iowa 32, 37, 72 N.W.2d 463, 466 (1955) (citations omitted). Although conflicts of interest are perhaps more often recognized where defendants are tried jointly, we have pointed out that the same dangers are present where their trials are separate. *See State v. Gatewood*, 179 N.W.2d 520, 523 (Iowa 1970); *cf. Cosgrove v. State*, 304 N.W.2d 184, 187 (Iowa 1981) ("[T]he potential conflict of interest inherent in the representation of both a defendant and an adverse party or witness is as substantial as in situations involving dual representation and should ordinarily militate against concurrent representation by counsel."). In both sorts of cases,

> [m]aintaining the independence of professional judgment required of a lawyer

precludes the acceptance or continuation of employment that will adversely affect the lawyer's judgment on behalf of, or loyalty to, a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Iowa Code of Prof'l Responsibility EC 5–14 (2002).

Allegations such as Powell's raise the concern that an attorney's conflicting obligations will "effectively seal [the lawyer's] lips on crucial matters and make it difficult to measure the precise harm arising from counsel's errors." *Mickens*, 535 U.S. at 168, 122 S.Ct. at 1241, 152 L.Ed.2d at 302 (citation and internal quotation omitted). Our rules of professional responsibility thus exhort the lawyer to "weigh carefully the possibility that the lawyer's judgment may be impaired or loyalty divided if the employment is accepted or continued." Iowa Code of Prof'l Responsibility EC 5–15 (2002). "The lawyer should resolve all doubts against the propriety of the representation." *Id.*

Although the district court asked Flander if she had a conflict and received a simple negative response, the court did not ask her to elaborate or otherwise inquire into the specifics of the situation. *See United States v. Krebs*, 788 F.2d 1166, 1172 (6th Cir.1986) ("[W]hen a trial court becomes aware of a potential conflict of interest, it is obligated to pursue the matter even if counsel does not."). Moreover, when the court decided substitution was not warranted because the case was only two weeks old and Powell responded that two of the charges had been outstanding for several months, the court stated it "didn't know anything about those [other files]" and moved on. Simply put, the court did not sufficiently examine the rela-

tionship between Powell, Flander, and Ulrich. The court therefore abused its discretion when it denied Powell's request for substitution, insofar as it did so without developing the facts upon which such discretion could properly be exercised. *See Pippins*, 661 N.W.2d at 548 (abuse of discretion where decision rests on untenable grounds); *Graber*, 616 N.W.2d at 638 (untenable grounds where decision not supported by substantial evidence).

■ We point out that this is not a case where the record clearly shows that multiple codefendants requested that the same attorney represent them, or consented to appointment of the same attorney after they were advised of a conflict. Rather, from the record before us we simply have a lone defendant inquiring about the propriety of his attorney's representation. *Cf. State v. Tejeda*, 677 N.W.2d 744, 747–48 (Iowa 2004). Although we are cognizant of the realities of life in the district court, the right to counsel demands the court promptly deal with the issue of the conflict, and not let it simmer on the back burner.[3] Once the court is made aware of a gestating conflict it is insufficient to merely leave open the possibility of further inquiry without undertaking any follow-up measures. *See Watson*, 620 N.W.2d at 238 (where court knows or reasonably should know of the possibility of a conflict, a court has a sua sponte duty to inquire). As indicated, there is nothing in the record to suggest the court revisited this matter as the case inexorably progressed towards trial. There was not any other mechanism by which the issue of divided loyalties would be addressed. It is unrealistic to expect more from a defendant untrained in the law. *Cf. Tejeda*, 677 N.W.2d at 749.

Moreover, the right to counsel is not a question left solely up to the attorney—an especially tough call when that same attorney's loyalties have been questioned. These two concerns motivated the characterization of the duty to inquire in *Watson* as a *sua sponte* duty. *See Watson*, 620 N.W.2d at 238. The court has the heavy burden here to seek sufficient information to make an informed decision as to whether there is a conflict of interest.

In sum, the court did not sufficiently inquire into Powell's allegations before it denied his request for substitute counsel. Far too many important questions—chief among them the precise nature of Flander's representations—were left unanswered even though the district court was put on notice of a potential conflict early on in the process. It therefore abused its discretion when it denied Powell's request for substitute counsel without ascertaining the facts necessary to determine whether a conflict was present, even though it knew of the possibility of a conflict.

## B. The Remedy

In accordance with our decision in *Watson*, Powell requests we remand this case for an inquiry into his allegations. Unlike *Watson*, here it is contended that the record only shows the *possibility* of a conflict. *Cf. Watson*, 620 N.W.2d at 241–42 (reversing and remanding for new trial because record on appeal showed an *actual* conflict of which trial court knew or should have known). We agree the record before us shows the possibility of a conflict, and therefore a remand for an inquiry into Powell's allegations is appropriate. *See id.* at 238 ("If the record on appeal shows only the possibility of a conflict, then the case

---

**3.** We also note that it is, as a matter of judicial economy, far more efficient to resolve potential problems early on in the process, rather than wait until trial or later, after significant resources have already been expended on a particular court-appointed defense attorney.

must be remanded for a determination as to whether an actual conflict existed and/or whether the defendant made a valid waiver of his right to independent counsel."); Wayne R. LaFave et al., *Criminal Procedure* § 11.4(b), at 79 (2004 Supp.) ("where the defendant alleged cause for replacing counsel, and the trial court failed to hold an inquiry, the proper appellate court response on review following conviction is to remand for a hearing as to whether cause did exist . . . ."); *cf. Tejeda*, 677 N.W.2d at 752–53 (preserving issue of pretrial breakdown in communication for postconviction relief, because unlike conflicts of interest, breakdowns may be resolved before trial). There was a possibility of a conflict because of the potential witness problem in the future. More importantly, however, since the court did not determine the extent and nature of Flander's representations, there was potential for divided loyalties in the present. Because the trial court failed to develop an adequate record as to whether an actual conflict existed, the record on appeal is likewise insufficient for our de novo review. We are unable to determine the extent or nature, if any, of Flander's representation of Ulrich; nor can we ascertain whether such representation, if it occurred, would result in divided loyalties. The precise nature of the representation will, of course, determine the sorts of conflicts of interests implicated. *See, e.g., Watson*, 620 N.W.2d at 241–42 (actual conflict found where record clearly established defense counsel also represented a key prosecution witness); *Karston*, 247 Iowa at 37, 72 N.W.2d at 466 (joint representation); *cf. United States v. Culp*, 934 F.Supp. 394, 397–98 (M.D.Fla. 1996) ("intractable conflict of interest" warranting disqualification where defense counsel had previously represented coconspirators in related proceedings).

On remand, the record should be developed further in the district court to determine whether there was an actual conflict, and, if so, whether Powell made a valid waiver of his right to independent counsel. *See Watson*, 620 N.W.2d at 238. If an actual conflict is found, the district court must grant Powell a new trial; if not, his convictions should stand. *See id.* at 238. We affirm on this condition. *Cf. In re Luloff*, 512 N.W.2d 267, 275 (Iowa 1994) (affirming on condition and remanding). We do not retain jurisdiction.

## IV. Conclusion

Because the record on appeal shows a possibility of a conflict, this case must be remanded for a determination as to whether an actual conflict existed. If an actual conflict is found, Powell must be granted a new trial; if not, his convictions stand. In accordance with the decision of the court of appeals, Powell's sentences are vacated and he shall be resentenced before a different judge.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART, VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART, AFFIRMED ON CONDITION IN PART; REMANDED WITH INSTRUCTIONS.**

All justices concur except LARSON, J., who takes no part.