# IN THE COURT OF APPEALS OF IOWA

No. 13-0587
Filed April 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAHLEE LASHAWN PRICE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Thomas J. Bice,
Judge.


        A defendant appeals from a judgment of conviction and sentence imposed
based on various charges following a bench trial on the minutes of testimony.
**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney
General, Ricki Osborn, County Attorney, and Jordan Brackey, Assistant County
Attorney, for appellee.


        Considered by Potterfield, P.J., Bower, J., and Goodhue, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**GOODHUE, S.J.**

Jahlee Lashawn Price appeals from a judgment of conviction and sentence imposed based on various charges following a bench trial on the minutes of testimony.

## I. Background Facts and Proceedings

On November 13, 2012, a Fort Dodge police officer, Joe Roetman, proceeded to an apartment building located within the city to serve an arrest warrant on Clifford Shivers. The apartment was in an area Roetman had frequently been called to investigate. On arrival he found Shivers on the front steps of the apartment building accompanied by two other men, one of whom was Price. Not knowing how the three would react, Officer Roetman called for backup before serving the warrant. The backup officer served the warrant, and arrested and handcuffed Shivers.

While the backup officer was making the arrest, Roetman asked the other two men for identification. They responded they had none. Roetman then asked the men for their names and dates of birth. At that point the third man present gave Price a look out of the corner of his eye, which made Roetman nervous. Without specificity, Roetman testified that Price's body language made him concerned that he might have a weapon. Roetman asked Price if he had a weapon, and Price put his hands up in the air and started backing up. Roetman asked Price to put his hands on the wall and patted him down. Roetman discovered Price was carrying a loaded pistol. Price admitted he did not have a permit. A further strip search of Price produced marijuana packaged for resale. After booking Price into jail, another quantity of marijuana was found in Price's

coat pocket. Price was charged with introducing a controlled substance into a detention facility, possession of marijuana with the intent to deliver while in possession or control of a firearm, and being armed with a pistol or a loaded firearm within a city.

On November 27, 2012, while awaiting further proceedings, and apparently while incarcerated, Price sent a letter to the court stating in part as follows, "I was Recently appointed Joe McCarville as my Public Defender. Do [sic] to a conflict of interest I would like to be appointed to Charles Kenville or Darrel Johnson." The request was followed by a somewhat lengthy letter explaining Price's family situation and requesting mercy from the court. There was no amplification of the allegation of a "conflict of interest." The matter proceeded without further record of any discord between Price and his counsel, and without the court addressing Price's request. McCarville remained Price's court-appointed attorney.

Price, through counsel, filed a motion to suppress the seizure of the pistol and marijuana, and a hearing was held on January 18, 2013. Price maintained there was no reasonable suspicion or probable cause to detain him or to perform the pat-down search. Price contends the search was made in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and article one, section eight of the Constitution of the State of Iowa. Price's motion to suppress was overruled. The firearm enhancement to the possession with intent to deliver charge was dropped, and a bench trial based on the minutes in the trial information followed. Price was found guilty of all three charges, and he has

appealed based on the denial of his motion to suppress and the failure of the court to address his request for substitute counsel.

## II. Standard of Review

The motion to suppress involves a constitutional issue; therefore, the review is de novo. *State v. Manna*, 534 N.W.2d 642, 643 (Iowa 1995). The failure to address Price's request for substitute counsel also involves the right to counsel under the Sixth Amendment and also triggers a de novo review. *State v. Tejada*, 677 N.W.2d 744, 749 (Iowa 2004).

## III. Error Preservation

Error is generally preserved when the issues to be reviewed have been raised and ruled on by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Error has been preserved regarding Price's claim of an illegal search and seizure under the United States Constitution and the Constitution of the State of Iowa. Error was not preserved in the traditional sense as to Price's request for substitute court-appointed counsel. However, a pro se letter making such a request constitutes error preservation when the trial court fails to address the issue. *Tejada*, 677 N.W.2d at 749.

## IV. Discussion

Price makes no distinction between unreasonable search and seizures under the Iowa Constitution and the United States Constitution; therefore, our discussion of the Fourth Amendment will apply equally to the state constitutional claim. *See State v. Lewis*, 675 N.W.2d 516, 522-23 (Iowa 2004).

## A. The Legality of the Initial Detention

Law enforcement was in the process of executing an arrest warrant on the third party when Price was asked for identification and for his name. Not all police contacts are considered a seizure within the meaning of the Fourth Amendment. *State v. Smith*, 683 N.W.2d 542, 546 (Iowa 2004). Even if there is no basis for suspecting an individual, an officer does not violate the Fourth Amendment by approaching individuals and asking for identification and their names. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004). A person has not been seized until a reasonable person believes he is not free to leave. *United States. v. Mendenhall*, 446 U.S. 544, 554 (1980).

There is nothing in the record that would indicate Price was not free to leave until he was pushed against the building wall and the pat-down search was conducted. Prior to that time, Roetman had determined Price was not carrying identification or was unwilling to produce it, and observed the furtive glance from Price's companion, Price's unspecified body language, and the fact that he threw up his hands and backed away when asked if he had a gun. There was no seizure or detention prior to that time.

## B. The Legality of the Pat-Down Search

Searches conducted without a warrant are per se unreasonable unless subject to established exceptions, which include a search based on probable cause coupled with exigent circumstances. *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). Exigent circumstances that justify searches without a warrant often involve situations where there is danger to a law enforcement officer. *State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973). Exigent circumstances must be

supported by specific articulable grounds determined by an objective standard. *State v. Naujoks*, 637 N.W.2d 101, 109 (Iowa 2001). The issue becomes whether there were specific articulable grounds for Officer Roetman to believe he or the backup officer was in danger.

Another long established exception to the warrant requirement is when an officer is performing an arrest. *State v. Canada*, 212 N.W.2d 430, 434 (Iowa 1973). The authority to search an arrestee has been extended to an arrestee's companion in some courts utilizing what has been termed the "automatic companion rule." *See Perry v. State*, 927 P.2d 1158, 1163-64 (Wyo. 1996) (adopting the rule and listing other courts that have implemented the rule). The reason for the rule has been stated as follows:

> It is inconceivable that a police officer effecting a lawful arrest . . . must expose himself to a shot in the back from a defendant's associate because he cannot, on the spot ,make the nice distinction between whether the other is a companion in crime or a social acquaintance.

*United State v. Barryhill*, 445 F.2d 1189, 1193 (9th Cir. 1971).

Iowa has not adopted the "automatic companion rule." Nevertheless, presence of a companion of an arrestee at the time and point of the arrest is an important factor to be considered in determining whether a law enforcement officer has a clear articulable reason to believe he is in danger from a companion who could be armed and dangerous. Other factors present that raised reasonable concern were as follows: (1) the location was in an area where the officer had frequently investigated; (2) Price was unable to provide identification; (3) the officers were outnumbered and one of the officers was concentrating on the arrestee; (4) a furtive glance was made towards Price when the two parties

accompanying Shivers were asked for their names; (5) body language of the two men indicated something was amiss; and (6) when asked if he had a weapon, Price put up his hands up and backed away. "The officers need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Applying that standard to the factors Roetman was able to clearly articulate, there was justification to conduct the pat-down search. Once the weapon was found, Price was subject to arrest, and a search incident to the arrest was appropriate.

### C. A Court's Duty When It Receives a Request for Court-Appointed Counsel

If an indigent defendant requests substitute counsel, the court has a duty to determine the basis for the defendant's dissatisfaction. *State v. Lopez*, 633 N.W.2d 774, 780 (Iowa 2001). Price indicated that due to a conflict of interest he would like to have specifically named substitute counsel appointed. The purpose of the Sixth Amendment is to ensure that a defendant will be represented by an effective advocate, not to guarantee a party to a right to counsel of his choice. *Wheat v. United States*, 486 U.S. 153, 159 (1988). Nevertheless, Price indicated his request was based on a "conflict of interest," which telegraphed dissatisfaction with his present attorney. The note found its way into the court file and was presumably presented to the court.

The record reflects no court action on Price's request. There is no record upon which the court can review the presence or absence of a "conflict of interest." If the record shows a possibility of a conflict, the case must be

remanded to determine whether or not an actual conflict exists, and if so, whether it was waived by the defendant.  *State v. Watson*, 620 N.W.2d 233, 238 (Iowa 2000).

### D. The Remedy for the Court's Failure to Address the Letter Requesting Substitute Counsel

In *Watson* there was ample evidence the court knew a key witness and Watson were represented by the same counsel, but the court held no hearing to determine whether the conflict adversely affected counsel's performance.  *Id.* at 238-39.  Watson's conviction was reversed and remanded for a new trial with counsel free of any conflict.  *Id.* at 239.

In *State v. Powell*, 684 N.W.2d 235, 236-37 (Iowa 2004), Powell made written and oral requests to the court for a named substitute counsel.  The defendant asserted his counsel had withheld information from him and had represented someone who might be called as a witness.  *Powell*, 684 N.W.2d at 236.  A hearing was held, but after counsel asserted she had no conflict, no further record was made on the issue.  *Id.* at 240.  The case was remanded for a hearing on whether an actual conflict existed, and if so, a new trial was to be granted, otherwise the conviction would stand.  *Id.* at 242.

In *Tejeda*, Tejeda wrote two letters to the court requesting substitute counsel alleging a breakdown in communication and complaining counsel was trying to get him to plead guilty, and further, that Tejeda was withholding evidence from his attorney.  677 N.W.2d at 747-48.  There was no evidence the court ever responded.  *Id.* at 749.  There was nothing in the record to support a finding of a breakdown in communication except Tejeda's bare allegations.  *Id.* at

751. Given the scant record, the court noted Tejeda could file for postconviction relief and preserved Tejeda's right to raise the issue in such a proceeding. *Id.* at 753. The *Tejeda* court differentiated the *Watson* case on the basis that *Watson* involved a conflict of interest whereas Tejeda's involved a breakdown in communication. *Id.* at 752.

In the instant case there is not a scintilla of evidence as to the basis of Price's complaint. There was a clear indication of the nature of the complaint in *Watson* and *Powell*, and to a lesser extend in *Tejeda*. We have no knowledge of what it was Price termed a "conflict of interest." We are unwilling to hinge the appropriate remedy based on a layman's use of the term "conflict of interest" without any amplification.

We base our determination of the appropriate remedy primarily on the vagueness of the request. Legally his complaint may have been a breakdown in communications or simply a request for a preferred attorney. There is no evidence in the record supporting a conflict of interest. Furthermore, his assertion falls far short of establishing a conflict that effected counsel's performance as required to support a reversal. *See Mickens v. Taylor*, 535 U.S. 162, 163 (2002). A court need not conduct a hearing every time a defendant lodges a complaint against a lawyer. *Tejeda*, 677 N.W.2d at 751.

Based on the barebones allegation of a conflict of interest, the alleged denial of Price's Sixth Amendment right should be preserved for a postconviction relief proceeding where an expansive hearing can be held. *See Pippins v. State*, 661 N.W.2d 544, 548-50 (Iowa 2003) (addressing the trial court's failure to appoint substitute counsel when a conflict of interest has been alleged in a

postconviction relief action).  As in *Tejeda*, we affirm the judgment of conviction without deciding whether Price was denied his Sixth Amendment right to counsel and preserve the issue for postconviction relief.

**AFFIRMED.**